J. M. HARLAN, Appellee, v. H. N. MANINGTON and JENNIE
A. MANINGTON, Appellants.

**Instruments affecting real estate:** CONSTRUCTION: WHAT LAW GOV-
1  ERNS. All instruments affecting real estate within this jurisdic-
tion will be construed according to the law of this state, and
not according to the law of a foreign state in which they may have
been made.

**Same:** ESTATE GRANTED: POWER OF DISPOSITION. Where land is pur-
2  chased by executors for the benefit of a devisee, under a will
providing that the grantee shall have and hold the same during
his natural life, with power to devise the same, but in default of
devise the remainder to vest in his lawful heirs and their heirs
and assigns forever, a fee title is not acquired by the grantee,
even though granted power of disposition.

**Same:** RULE IN SHELLEY'S CASE. The rule in Shelley's case as applied
3  to wills is one of construction rather than property, while the
converse is true as applied to deeds.

**Wills:** RULE IN SHELLEY'S CASE: APPLICATION. The rule in Shelley's
4  case does not apply unless the particular estate and that in re-
mainder are either both legal or both equitable; nor if the re-
mainder to heirs is contingent; nor if there is an intermediate
estate between the life estate and the remainder.
In the instant case the rule in Shelley's case is not applicable to
convert the life estate of grandchildren into a fee, notwithstanding
the the power of disposition and use of the word heirs.

*Appeal from Polk District Court.*—HON. LAWRENCE
DE GRAFF, Judge.

FRIDAY, NOVEMBER 17, 1911.

ACTION to cancel a contract for the purchase of certain
real estate in Warren county, Iowa, and to recover the sum
of $200 paid by plaintiff on said contract. Defendants
demurred to the petition, and, their demurrer having been

overruled, they elected to stand thereon, and judgment was rendered against them as prayed. They appeal.—*Affirmed.*

*O. C. Brown,* for appellants.

*Hager & Powell,* for appellee.

DEEMER, J.—Plaintiff and defendants entered into a written contract, whereby the defendants for a stated consideration agreed to convey to plaintiff by warranty deed certain real estate in Warren county, this state. By the terms of the contract, defendants agreed to furnish an abstract showing a fee-simple title to the property in said defendants. As part of the purchase price, plaintiff paid the defendants the sum of $200. It is claimed that defendants had no other than a life estate in said lands, and that the abstract furnished by them showed that they did not have a fee-simple title. Defendants tendered a deed and an abstract to the plaintiff, which he, plaintiff, refused to receive, but, on the contrary, elected to rescind the contract and demanded the return of the $200.00 already paid. The issue on this appeal is the nature and character of defendants' title to the property agreed to be conveyed. If they have nothing but a life estate, the ruling on the demurrer is correct. On the other hand, if they have a fee the demurrer should have been sustained, and the decree should be reversed. Whatever defendants' title, it came to them through the will of one Henry Nourse, deceased, who at the time of his decease was a resident of the state of Illinois, and was seised of certain land and personal property, and through a deed of the land from one James McGee, who derived whatever authority he had to convey from the aforesaid will. It is alleged that the consideration for this conveyance was paid by Hiram Wilson and James McBrown, executors of the will of Henry Nourse, and that the land was purchased

by these executors in virtue of the provisions of the will. This deed ran to defendant Henry N. Manington, and it is alleged that both grantor and grantee therein were residents of Illinois at the time it was made. Necessarily the question arising must be solved by a reference to the will and deed, and we here set out the material parts thereof.

The clauses of the will relied upon read as follows:

Third. I give, devise and bequeath unto my executors and executory trustees hereinafter named and to their successors as hereinafter specified in trust for the use of my daughter, Jane Nourse, during such time as she shall continue to be insane one-third of my estate that shall remain after the payment of all just claims and the bequest of two thousand dollars ($2000.00) hereinafter set forth to be managed and used for her benefit and support as long as she shall continue to be insane and in case she shall again become sane and of sound mind and memory then this devise and bequest shall vest in her and her heirs absolutely, but in case of her decease before she shall so become sane and of sound mind, then all that shall remain of said devise and bequest I do hereby give, devise and bequeath to my grandchildren, Henry N. Mannington, Blanche E. Mannington, Ethel L. Mannington, and Anna A. Mannington, and in case of the previous decease of either of them then to the survivor or survivors of them and their heirs absolutely, subject, however, to any limitations hereinafter made as to the time when it shall be turned over to them.

Fourth. I do hereby give and bequeath the sum of two thousand dollars ($2000.00) to Mrs. Abby H. Mannington of Geneseo, Illinois.

Fifth. I do hereby give, devise and bequeath unto my said grandchildren Henry N. Mannington, Anna A. Mannington, Blanche E. Mannington and Ethel L. Mannington one-third part of my said estate after the payment of all just claims and the said bequest of two thousand dollars ($2000.00) and in case of the decease of either of them without issue then to the survivor or survivors of them, and in case of the decease of either of said grandchildren leaving a child or children living at the time of my

decease such child or children shall take the said deceased parent's share in this devise and bequest, and it is hereby directed and ordered that in the division to be made by virtue of this and division hereof numbered 'Third' my said grandchildren shall each share equally and alike in such division and at the time they severally arrive at their majority and become of lawful age they shall each receive as soon as it can be so arranged one-third part of said share of said estate, to wit: one-third of the distributive share to which such grandchild is entitled by virtue of this devise and bequest, and at the age of twenty-five (25) years they shall severally receive another third part thereof and the remaining third part shall be by said executors invested in productive real estate in severalty for their several uses and the title so arranged that the said grandchildren or their heir or heirs in case either of them shall have deceased leaving issue surviving them shall receive the net income of such real estate, and when of lawful age control the use thereof during the natural lives of said devisees and such devisees shall have full power to dispose of the remainder of said real estate by will and in default of such will said remainder shall descend to the lawful heir or heirs of such devisee, and during the minority of either and all of my said grandchildren their father John Mannington is hereby empowered to manage, lease, keep in repair and insured if necessary all such real estate so owned for life by them and out of the rents thereof pay all taxes and necessary expenses and use the balance of the proceeds for their several benefit as he may judge best, and no bond shall be required of him for the execution of such trust and during said minority their money and whatever securities it may be invested in shall remain in the care and control of my said executors and executory trustees and also the several shares of the same payable at their attaining the age of twenty-five (25) years until the same is paid over to them, and in so much as it will probably be found impossible to make the said division of estate precisely in thirds or to judiciously purchase the several items or portions of real estate so as to make them of precisely equal value I do hereby order and direct that my executors and executory trustees exercise their best judgment and discretion therein so that in case any one has real estate of less

value than another such devisee shall be paid the difference
as nearly as can be done in their best judgment in money
or other personal estate and whatever my said grandchildren
or their heirs shall receive by virtue of devise and bequest
numbered 'Third' herein shall be in all respects distributed
and invested in the manner in this division hereinbefore
specified. . . .

And lastly, I do hereby nominate and appoint Hiram
Wilson and Whitfield Sanford of Geneseo, Henry County,
Illinois, my executors and executory trustees of this my
last will and testament, hereby revoking all former wills
by me made and confirming this and this only to be my
last will, and I do hereby direct that no bond or security
be required of them as such executors and trustees nor of
the persons hereinafter named by me as their successors,
but that this waiver extend to no other appointee by virtue
of the provisions hereinafter set forth.

And I do hereby empower my said executors and
executory trustees to collect by law or otherwise all debts
and demands due or extend the same, make, execute,
acknowledge and deliver all such deed or deeds, contract or
contracts, release or releases, lease or leases, and all such
instrument or instruments in writing under seal or other-
wise and to do all such acts or things as may be by them
judged wise, just and convenient in and about the execution
of this will and the management of the trusts herein set
forth, including the power to sell and convey real estate in
any place and the investment and loaning of money or
purchasing real estate without as well as within the state
of Illinois, and to make all divisions of estate herein
provided for as equally as possible and do and perform.
all and singular all such acts and things as would be lawful
for me to do in the premises were I living and for the
best interests of said estate, and in case the said Hiram
Wilson shall for any cause fail to serve as such executor
and executory trustee until the final completion of the
execution of this will and the trusts therein set forth, then
and in that case I do hereby nominate and appoint his
brother George Wilson to be his successor with like powers
as hereintofore conferred upon said Hiram Wilson, and in
case the said Whitfield Sanford shall for any cause so
fail as aforesaid, then and in that case I do hereby nominate

and appoint George W. Shaw of said Geneseo to be his successor with like powers as hereinfore conferred upon said Whitfield Sanford, and in case either of said contingent successors shall die, remove from the county of Henry aforesaid or enter upon the discharge of the duties of the office of such executor and executory trustee as aforesaid I do hereby empower the then acting executors and the remaining contingent successor or majority of them to appoint in writing over their signatures another such contingent successor who, upon signifying his consent thereto or acceptance in writing shall stand in the place of the one who shall have so become an acting executor, died or removed as aforesaid and any such vacancy thereafter so accruing may be filled in like manner so that there may be two such contingent successors kept appointed, but a majority of such executors and contingent successors may at any time revoke such appointments and in like manner make other appointments, and I do hereby empower my said executors and their successors, should they deem it wise and just, to convey to either of my aforesaid grandchildren any real estate which I may own at the time of my decease, fixing such price upon the same as they may deem just in lieu of purchasing lands for them in the division of this will numbered 'Fifth' contained to such extent as I may have such lands and not otherwise in this will disposed of, and should any of said grandchildren have deceased, leaving an heir or heirs, such conveyance may be made to such heir or heirs in like manner.

By the terms of a codicil duly executed, one James McBrown was substituted as executor in place of William Sanford. The deed from McGee to Manington recited a consideration of $9,263 paid to the grantor by Wilson and McBrown, executors of the will of Henry Nourse; granted and sold the land in controversy consisting of four hundred and six acres to the grantee, and provided as follows:

To have and to hold the same unto the said party of the second part during his natural life, with power to devise the said lands or any part of them at any time after the said party of the second part shall attain lawful age,

by a will duly executed in accordance with the laws of the
state of Iowa, and in default of such devise, and in case
the said party of the second part shall die intestate then
the remainder of all estate, title, and interest in said lands
shall vest in the lawful heirs, of the said party of the
second part and their heirs and assigns forever, saving and
reserving to the party of the first part such right, title
and interest in said premises as is to him devised by a
certain lease bearing even date with these presents wherein
the said tract of land with other tracts is leased to the party
of the first part by John Manington, guardian of the said
party of the second part, and of other devises in the said
last will and testament of the said Henry Nourse. . . .
And the said party of the first part, for himself, his heirs,
executors, administrators, and assigns, does hereby covenant
to and with the said party of the second part, his heirs,
executors, administrators, and assigns, that he is well seised
of the said premises and of each and every parcel thereof
as of a good, lawful, and indefeasible title in fee simple,
that he has full power and lawful authority to convey the
same in manner and form as aforesaid, that the same are
free from all incumbrances save the lease aforesaid, that all
such further and other deeds shall be executed as may be
necessary to perfect and confirm the title of the party of
the second part to the said premises, and that the said
party of the second part in the quiet and peaceable pos-
session of said premises against the lawful claims of all
persons whomsoever he will warrant and forever defend.

It is alleged that the purchase of the lands from
McGee by the executors of the estate was pursuant to the
provisions of the will and in virtue of the terms thereof,
and that defendant took nothing but a life estate thereunder.
From the paragraphs of the will heretofore set out, it will
be noticed that the devise to the grandchildren, of whom
defendant Henry Manington was one, is divided into three
parts, one to be paid as these children should severally
arrive at lawful age, another when they arrived at the
age of 25, and the "third part shall be by said executors
invested in productive real estate in severalty for their uses
and the title so arranged that the said grandchildren or

their heir or heirs in case either of them shall have deceased leaving issue surviving them shall receive the net income of such real estate, and when of lawful age control the use thereof during the natural lives of said devisees and such devisees shall have full power to dispose of the remainder of said estate by will and in default of such will said remainder shall descend to the lawful heir or heirs of such devisee." The last clause of the will provides that, should any of said grandchildren be deceased leaving an heir or heirs, the executors appointed by the will might convey the lands purchased by them to such heir or heirs. The trial court held that, under the will and deed, defendant Henry N. Manington took nothing but a life estate in the lands, while defendants contend that Henry Manington took a fee because of absolute power of disposition given him by the will, and for the further reason that under the rule in *Shelley's Case* he as ancestor took an estate in fee simple because of the use of the words "his heirs," etc.

Counsel for appellant have fallen into the fundamental error of assuming that the deed is to be construed with reference to the law of the place of contract, to wit, the law of Illinois, and that the will must also be construed with reference to the law of that state, because it was testator's domicile. The universal rule in this connection is that all instruments affecting real estate in this jurisdiction must be construed by the courts of this state. To this rule we have given our steady adherence. *Loving v. Pairo,* 10 Iowa, 282; *Doyle v. McGuire,* 38 Iowa, 410; *Moore v. Church,* 70 Iowa, 208; *Franzen v. Hutchinson,* 94 Iowa, 95; *Manton v. Seiberling,* 107 Iowa, 534; *Lynch v. Miller,* 54 Iowa, 516.

1. INSTRUMENTS AFFECTING REAL ESTATE: construction: what law governs.

The questions presented must be solved by our own decisions, or by our views of the law, giving to decisions from other states no more force than they seem to be entitled to by reason of the persuasive effect of the argu-

ments used in their support. Little, if any, reliance is

**2. SAME: estate granted: power of disposition.** placed upon the proposition that Manington took a fee because of the power of disposition lodged in him by the terms of the will or deed.
Doubtless the reason for this is that our recent cases so clearly settle the rule against him that no further argument can be offered in support of the contention. The point is ruled against him by *Baldwin v. Morford,* 117 Iowa, 72; *Spaan v. Anderson,* 115 Iowa, 121, and other like cases. He is driven, then, to a reliance upon the rule in *Shelley's Case,* and, if that be inapplicable, he must fail. The rule of that famous case has been so often stated and so clearly elucidated in *Doyle v. Andis,* 127 Iowa, 36; *Brokaw v. Brokaw,* 113 N. W. (Iowa) 469; *Westcott v. Meeker,* 144 Iowa, 311, that it is needless to repeat it.

In the cases already cited the rule was declared to be in force in this state with this modification: That as to wills at least it is to be regarded as a rule of construction,

**3. SAME: rule in Shelley's case.** and not a rule of property, while as applied to deeds the converse is perhaps true. At any rate, in the *Westcott v. Meeker* case, *supra,* which involved a will, the rule was expressly held to be one of construction, which like most arbitrary rules with reference to the construction of wills yields to testator's intent, if that can be ascertained from the terms of the will itself.

Taking the will by its "four corners," it is apparent that the testator did not intend to convey more than a life estate to Henry N. Manington. Moreover, he did not give

**4. WILLS: rule in Shelley's case: application.** him full power of disposition. The only right of disposition conferred upon the devisees or the grantee in the deed from McGee was to devise the property by will, which is much less than absolute power. Indeed, we do not see how testator could have selected stronger words to show his intent to devise but a life estate to the devisees. The deed itself was of a

life estate with limited power of·disposition in the grantee. Assuming, then, that the rule in *Shelley's Case* as applied to wills is a rule of construction, and not a rule of property, we are abundantly satisfied that testator did not intend that his grandchildren or any of them should take an estate in fee.    Construing the deed and will together, and assuming arguendo that defendants' title came through the deed alone, we have the further proposition:    Is the rule in *Shelley's Case* construed as a rule of property applicable to the facts?    That rule was a technical one announced for the purpose of vesting titles immediately, and to prevent the tying up of estates.    As a general rule, it was inapplicable unless the remainder was limited to the "heirs" or the "heirs of the body" of the first taker of the freehold.    The rule does not apply even if these words be used, if so phrased as to designate children or other definite individuals.

Again, if the remainder to the heirs or heirs of body is in form contingent upon some event, the rule does not apply.   Nor is it applicable if there be an intermediate estate interposed between the life estate of the ancestor and the remainder to the heirs.    See Fearne on Contingent Remainders, 29; *Colson v. Colson,* 2 Atk. 246.    Another pre-requisite to the application of the rule is that the particular estate and the estate in remainder shall both be of the same kind; that is to say, both legal or both equitable.    *Loring v. Eliot,* 16 Gray (Mass.) 568; *Croxall v. Shererd,* 5 Wall. 268, (18 L. Ed. 572); *Green v. Green,* 23 Wall. 486, (23 L. Ed. 75); *Hanna v. Hawes,* 45 Iowa, 437.    If to the word "heirs" in the limitation of the remainder there is added a further limitation to "their heirs," the courts are divided regarding the applicability of the rule. The following announce the doctrine that the rule applies: *Andrews v. Lowthrop,* 17 R. I. 60, (20 Atl. 97); 2 Jarman on Wills, 1205; Fearne on Contingent Remainders; *contra, De Vaughan v. Hutchinson,* 165 U. S. 566, (17 Sup. Ct.

461, 41 L. Ed. 827,) applying the law in Maryland as announced in *Shreve v. Shreve,* 43 Md. 382. In *Brown v. Brown,* 125 Iowa, 218, we approved arguendo the Maryland rule, and stated that the rule does not apply in such cases, citing in support of the proposition *Smith v. Collins,* 90 Ga. 411, (17 S. E. 1013); *McIntyre v. McIntyre,* 16 S. C. 290; *Myers v. Anderson,* 1 Strob. Eq. (S. C.) 344, (47 Am. Dec. 537); and *Dott v. Cunningham,* 1 Bay (S. C.) 453, 1 Am. Dec. 624), the reason for the holding being that by the use of such words a purpose is evinced of creating in the heirs of the first taker an estate in fee simple. If we are to regard this last exception to the rule of *Shelley's Case* as sound, it in itself disposes of the question before us, because under the deed the limitation is "to the heirs of Manington and their heirs and assigns forever."

But, as there may be some doubt in view of the conflicting authorities upon this proposition, we shall consider and determine the case upon other propositions, which we regard as controlling. In *Zuver v. Lyons,* 40 Iowa, 510, we said: "If the estate limited to the ancestor be a trust estate and the subsequent limitation to his heirs carries the legal estate, the two will not unite in the estate of inheritance in the ancestry, but the limitation to the heirs will be a contingent remainder." This was quoted in *Hanna v. Hawes,* 45 Iowa, 437, with approval, and held applicable to a will containing the following paragraph: "To my daughter, Sarah Little, wife of Sylvester Little, I give the sum of $2,000 to be invested in lands for my said daughter to have the income of the same during her life and at her death to go to the heirs of her body." In conformity with this provision, the executor of the will in that case conveyed certain real estate to Sarah Little, describing the source of title and using for the habendum clause the following: "To have and to hold the said premises with the appurtenances unto the said Sarah Little, wife of Sylvester Little, her

heirs and assigns forever." In construing the deed and will in that case, the court said:

The testator did not give Sarah Little $2,000 absolutely to be used and controlled at her will and pleasure, but the devise was coupled with the charge that it should be invested in lands, the income derived from which she only could use and have the benefit of during her life, and at her death the lands were to become the property of the heirs of her body, if any such there were. No direction was given as to whom the title to the lands should be vested in during the life of Mrs. Little. The form in which the thing intended by the testator was to be done was left to the discretion of the executor. The substance of the devise to Mrs. Little was that she should have the income during her life of $2,000 worth of land, or, in other words, of land purchased with the $2,000 set apart by the will for that purpose. The executor was charged with a trust, a due execution of which required that he should see that the money was invested in lands, the income of which should be vested in Mrs. Little for life, and the title to vest in the heirs of her body, if any such there were at her death. If the executor in the execution of this trust had vested the legal title to the land in John Doe, charged with the trust to permit Mrs. Little to receive the income during her life, and at her death to convey the title to the heirs of her body, the case would have been identical in principle with Zuver v. Lyons, 40 Iowa, 510. . . . A trust estate being created by the will, the executor had no power to enlarge or restrict whatever estate was so created. It is also apparent that he did not do so. The conveyance made by him sufficiently shows that he designed and intended thereby to carry out in good faith the trust, and this only he had the power to do. As between the parties to this estate, he did not have the power or authority to vest the legal title to the lands in Mrs. Little, discharged of the trust. Whatever estate she took was charged with the same trusts it would have been if the conveyance had been made to any other person. Conceding the rule in *Shelley's Case* to be law in this state, it is not applicable, because the testator did not vest the legal estate in Mrs. Little with a limitation over to the heirs of her body.

That case seems to rule the one now before us. Here there was a trust in the executors. "The remaining third" was to be invested by them in productive real estate for the use of the devisees, and the title so arranged that Manington, the devisee, should receive the net income during his natural life. The legal title could as well have been taken in the name of John Smith, charged with a trust in favor of Manington, as in Manington himself, charged with a trust to secure him the income of the estate during his life, and at his death to convey the title to his heirs. That this was a trust estate equitable in character in the executors or in the person to whom they directed the land to be conveyed is clear, and the deed from McGee to Manington was in execution of that trust. In such cases, as already shown, the rule in *Shelley's Case* does not apply for the reasons, first, because of the intermediate estate interposed or which might have been interposed between the life estate and the remainder to the heirs; and second, because the estates were not or might not have been of the same character, one being legal and the other equitable. Conceding arguendo, then, that the rule in *Shelley's Case* is a rule of property, and is applicable because of the intervention of the McGee deed, it does not follow for the reasons stated that Manington took a fee. But the deed should not be considered as the source of defendants' title. It was a mere conduit, through which the title came. This title was derived from the devise, and the executors had no authority by deed or otherwise to enlarge the estate. If the deed from McGee went beyond the terms of the will, its departures are invalid and of no binding force. So that we are finally brought down to the construction of the will. As to that, we have no doubt it devised but a life estate in the property described by the will, and directed the executors simply to secure him but a life estate in any lands in which they might invest. This being true, it is clear

that he could not make good title to the lands, and it follows that the demurrer was properly overruled.

The judgment must be, and it is, *affirmed.*