E. C. EICHER, Administrator, Appellee, v. S. J. BAIRD et al., Appellants.

**ASSIGNMENT FOR BENEFIT OF CREDITORS:** Validity—Special Assignment for Particular Creditors. An assignment by an insolvent debtor of all his property to a trustee for the purpose of securing and paying in a named order the claims of *certain* named existing bona-fide creditors and providing for the payment of any balance to the assignor debtor does not constitute a general assignment for the benefit of creditors (invalid because of the preference) when executed pursuant to an *agreement* with said creditors, or when *ratified* by said creditors prior to the acquisition of rights by others; and this is true even though there probably will be no balance to pay to the assignor debtor.

Headnote 1: 5 C. J. pp. 1038, 1040, 1057.

Headnote 1: 2 R. C. L. 661.

*Appeal from Washington District Court.*—D. W. HAMILTON, Judge.

SEPTEMBER 20, 1927.

Creditor's bill to set aside a transfer of certain notes on the ground that it was made for the fraudulent purpose of hindering and delaying the plaintiff, as a creditor, and upon the further ground that the instrument was invalid, under the provisions of Section 3071, Code of 1897 (now appearing as Section 12720, Code of 1924). The trial court held the transfer to be invalid, as a violation of said Section 3071. The defendants appeal.—*Reversed.*

*Edmund D. Morrison,* for appellants.

*Livingston & Eicher,* for appellee.

EVANS, C. J.—The defendant Baird was debtor to the plaintiff and others, and was such on the 19th day of September, 1924. On that date he was owner of two notes, for $3,000 each, which were inadequately secured by a second mortgage upon real estate. On the date named, he transferred to the defendant Morrison, as trustee, the said notes, by written assignment thereof, and by a written instrument of trust, reciting the purpose for which the assignment was made. Said trust agreement specified the application to be made by the trustee of the proceeds of the notes, if and when collected, as follows: First, to Freeland, Rice, Morrison & Morrison, and George Baird, pro rata; second, to E. J. Baird (wife of the debtor); third, to the truster any balance remaining.

The debtor was also owing the plaintiff the sum of approximately $5,000, which went to judgment against him a few days after the execution of this agreement. There was no provision for this creditor in the trust agreement. No actual dispute of fact is presented, upon the record. The only ground charged in plaintiff's petition, at the time of the introduction of testimony, was that the transfer was fraudulent, and was made with intent to hinder and delay and defraud the plaintiff. The plaintiff offered no independent evidence in support of such allegation. At the close of the evidence, however, he obtained leave to amend his petition, to the effect that the instruments in question amounted to a general assignment, and were in violation of the provisions of Section 3071, Code of 1897. Such was the ground upon which the trial court based

its decree.  Section 3071 (now Section 12720, Code of 1924), is as follows:

"12720.  No general assignment of property by an insolvent person, firm, or corporation, or in contemplation of insolvency, for the benefit of creditors, shall be valid unless it be made for the benefit of all the creditors in proportion to the amount of their respective claims; and in every such assignment the assent of the creditors shall be presumed."

The argument is that the assignment and trust agreement, taken together, amounted to a general assignment for the benefit of creditors, within the meaning of the foregoing section, and that it was invalid because of the preference provided thereby.

The counter-argument for the appellant is that the unequivocal purpose of the instruments in question was to secure, as far as possible, the claims of the particular creditors named in the trust agreement; that there was no intention to make provision therein for other creditors, and none was made; and that such instruments were made pursuant to consultation with, and request by, the beneficiary creditors therein named,— in other words, that the instruments were purely contractual, and were valid as such.

In support of the decree, reliance is had by appellee upon four of our previous cases: *Burrows v. Lehndorff*, 8 Iowa 96; *Cadwell's Bank v. Crittenden*, 66 Iowa 237; *King v. Gustafson*, 80 Iowa 207; and *Elwell v. Kimball & Champ*, 102 Iowa 720.  An analysis of these cases will show that they do not support the decree, upon this record.

In *Elwell v. Kimball & Champ*, the debtor executed a formal general assignment, conforming in its terms to the requirement of the statute.  At the same time, he executed a trust agreement to Elwell, as trustee, to secure preferential payment to certain creditors therein named.  Such trust deed was not made pursuant to any consultation with, or request by, such creditors; nor did such creditors, or any of them, claim to be creditors at such time; nor did they know that they had any claims against such debtor.  The truster had become their debtor by wrongful appropriation of their funds without their knowledge.  It was held in that case that the trust deed became a part of the general assignment executed simul-

taneously therewith, and that the transaction was invalid, under the statutory provision.

In *King v. Gustafson,* 80 Iowa 207, the insolvent debtor executed an instrument conveying to the grantee all his property, under direction that it be converted into money, and that the proceeds be applied upon certain obligations of the grantor's in the preferential order named therein. The sixth and last proviso thereof was that any balance remaining in the hands of the grantee should be applied by him pro rata upon all the other debts of the debtor. This was held to be a complete assignment of all the debtor's property for the benefit of all his creditors, and invalid under the statute, because of its preferential features.

In *Cadwell's Bank v. Crittenden,* 66 Iowa 237, the insolvent debtor executed an absolute bill of sale of all his property to one of his creditors, who received the same as security for the payment of his own claim and of the claims of certain other named creditors, who had assigned their claims in trust to the first creditor. It was orally agreed that, if any property or proceeds were left after such payment, it should be paid to the assignor. No provision was made therein for any creditor other than those named. Other creditors assailed the instrument as being an invalid general assignment. The attack was not successful. We held that the instrument was valid as a mortgage, given as security for the particular claims. It will be seen that this case holds contrary to the holding of the trial court in the case at bar. It is cited and relied on by appellee because of certain language contained in the opinion, which is claimed to lay down a criterion of distinction between a general assignment and a mortgage. Such language is as follows:

"This court has frequently heretofore had occasion to determine the legal effect of transactions in which insolvent debtors have made conveyances of all their property for the benefit of a portion of their creditors, and it is settled by the cases that the question whether such conveyance should be regarded as an assignment for the benefit of creditors, or a mortgage for the security of particular debts, is to be determined by the intention of the parties, as it may be ascertained from the circumstances of the transaction. If the conveyance is to a trustee,

and the debtor intends to divest himself, not only of the title to the property, but of all control over it; if it is intended as an absolute conveyance of all his property, and is made for the purpose of securing a distribution of its proceeds among his creditors, or a portion of them,—in legal effect it is an assignment for the benefit of creditors, no matter what name or designation the parties may have given it. On the other hand, if the intention of the debtor is merely to secure his debt to one or more of his creditors, and the conveyance is not intended as an absolute disposition of his property, but he reserves to himself a right therein, the conveyance will be treated as a mortgage, even though the debtor is insolvent at the time, and it covers all of his property, and but a portion of his debts are secured by it. *Fromme v. Jones,* 13 Iowa 480; *Lampson v. Arnold,* 19 Id. 479; *Farwell v. Howard,* 26 Id. 381; *Kohn v. Clement,* 58 Id. 589.''

The case in its facts is so nearly parallel to the case at bar as to make it an important precedent against the contention of appellee.

In the case of *Burrows v. Lehndorff,* 8 Iowa 96, the insolvent debtor, without consultation with, or request of, any creditor, executed a series of mortgages to different creditors at the same time, and caused the same to be recorded in a certain order, with five minutes of intervening time between the successive filings; and did also, on the same day, execute a trust deed of all his property, subject to such mortgages, for the benefit of the remaining creditors. It was held that the instruments, taken together, amounted to a general assignment, and were rendered invalid by the attempted preferences.

The appellee emphasizes the following propositions as controlling: (1) That the insolvent debtor parted *absolutely* with *all* his property, reserving no right thereto in himself; (2) that he conveyed the same to a *trustee.*

It is argued, in substance, that the conveyance of the property to a trustee, rather than to a creditor himself, marks the line of differentiation between a general assignment and a mortgage. This cannot be true. It is universally held that a warranty deed, absolute on its face, may; nevertheless, function as a mortgage, if such was the intention of the parties. In such a case, the law treats the grantee of the deed as a trustee

of the title, and as such, as bound to account and to return. If, in such a case, the grantee-creditor becomes a trustee, as a matter of law, why should it be said that a conveyance which describes him in terms as a trustee shall be thereby transformed, as a matter of law, into an invalid general assignment? The real distinction between a general assignment and an instrument of mere security to a particular creditor is that the first is a creature of the statute, and takes its validity therefrom, and that the second is contractual, and is valid, if at all, because it is a binding contract. A valid general assignment may be made without the knowledge or consent of any creditor; and if it is made in conformity to the statute, the law conclusively presumes the assent of every creditor thereto. An instrument which does not have the consent or ratification of the beneficiaries thereto fails as a contract for that reason. If it violates the restrictions of the statute, it fails as a general assignment for that reason. This distinction between the contractual and the statutory is carefully observed in the very cases relied on by the appellee. In *Burrows v. Lehndorff*, 8 Iowa 96, 100, the court instructed the jury that:

" * * * the execution of a chattel mortgage by defendant to plaintiffs, upon property which was subject to prior liens of the same kind, if done by defendant, *without the knowledge or request of plaintiffs and if not accepted by them*, is not such giving of property in payment or security as the law requires, in order to avoid an attachment * * * ."

One of the findings of fact submitted to the jury was:

"*Second.* In making them, did defendant consult his creditors?"

In its opinion this court said (page 102) :

"Under all these circumstances, we think that the jury were fully justified in finding that the *creditors had no knowledge of the transaction.*"

In the case of *Elwell v. Kimball & Champ*, the preferred beneficiaries were not consulted, and had no knowledge of the transaction. The instruments under consideration were made solely upon the motion of the debtor himself. In this case, and in *King v. Gustafson*, the attack upon the transaction was made by the purported beneficiaries thereof. In *Butler Bros. v. Diddy*, 83 Iowa 533, 539, this court said:

"Counsel for the defendant rely upon *Burrows v. Lehndorff*, 8 Iowa 96, and they urge that case as decisive of this one; and it may be conceded that in many respects the facts are similar. But in that case it will be observed that the mortgages were not executed in good faith, as security. They were executed by the insolvent to several creditors, *without their knowledge or consent, and without in any manner consulting them*; and it does not appear in that case that any of the creditors to whom the mortgages were so executed ever ratified the acts of the debtor, or accepted the mortgages."

In that case also, it was held that instruments executed without the knowledge of the beneficiaries could be rendered valid by their subsequent ratification or acceptance before intervening rights had attached.

The argument for appellee herein assumes that the instruments in the case at bar were made without the knowledge or consent of the beneficiaries. This is not the record. Of the four creditors first preferred, Mrs. Freeland and Mrs. Rice, sisters of the debtor, were the larger creditors. Mrs. Freeland was present at the time of the transaction, representing herself and her sister, Mrs. Rice. The trustee himself was a member of the firm of Morrison & Morrison, another creditor. Indeed, both members of the firm had been consulted. George Baird was a creditor to the amount of $500. He was the brother of the debtor. He was not present, but he had been previously consulted, and did afterwards ratify and accept. The same is to be said for Mrs. Baird. The bona-fide character of this indebtedness is uncontradicted. The instruments, therefore, constituted a contract, not simply with the trustee, but with the beneficiaries, as well. None of the beneficiaries except the trustee was made party to this suit. It necessarily follows that the validity of this contract was not dependent upon the statute, Section 3071, Code of 1897.

Emphasis is laid by appellee upon the fact that the assignor disposed *absolutely* of all the property which he had left. If this were to be deemed a controlling fact, yet the contention is not supported by the record. The trust deed in terms required payment to the truster of any balance remaining. But it is argued that there could never be any balance remaining, because the indebtedness secured was greater than the amount

of the notes. Of course, if the indebtedness should absorb the proceeds, nothing could be returned to the truster. But that is true of every instrument of security, and surely cannot be a controlling fact in the case. Moreover, it is conceivable that these secured debts might, in the course of time be paid by the debtor out of the proceeds of his homestead, or otherwise. In such event, the proviso of the trust deed would protect him and entitle him to a return of his security. The fact that an insolvent pledges all his property as security does not convert such security into a general assignment, under the statute. It is the right even of an insolvent to so apply his property, and all of it, to the security or payment of such bonafide indebtedness as he shall himself choose.

In *Lampson & Powers v. Arnold,* 19 Iowa 479, 486, we said, on this subject:

"Accordingly it was held by this court in *Cowles & Co. v. Ricketts,* 1 Iowa 582, that an absolute sale by a debtor of substantially all his property, in payment of a single debt, he having other creditors, and they being known to the transferee, was not within the statute, and that the word 'assignment' had a peculiar and appropriate or technical meaning in law, and was used in that meaning in the statute. And in *Fromme v. Jones,* 13 Iowa 474, it was held that a mortgage by an insolvent debtor of substantially all his property, to secure one of many creditors, was not within the statute, nor could it be brought within it by any proof *aliunde.* And in *Buell v. Buckingham & Co.,* 16 Iowa 284, it was held that an absolute conveyance by an insolvent corporation of all its property in payment of a single debt, leaving others unpaid, was not within the statute, and would not be held a general assignment, even in equity. The case of *Burrows v. Lehndorff,* 8 Iowa 96, is, perhaps, not in essential conflict with these cases, to which it must be held as subordinate."

To recapitulate: We have never held any instrument of security to be a general assignment, if not purporting to be such, and if made with the knowledge and consent of all the beneficiaries in advance, or accepted and ratified by them afterwards. The validity of such an instrument rests upon contract, and is not dependent upon the statute.

Nor is the fact controlling that the insolvent debtor pledges

*all* his property. His dominion over all of it is as unassailable as his dominion over a part of it.

Nor is it a controlling fact that the transfer is made to a trustee, rather than to the creditor personally. If it is made directly to the consenting creditor, equity will deem him a trustee, and will hold him responsible, as such. In pledging property as security for a debt, a trusteeship is legally unavoidable.

Nor is it a controlling fact that the debt secured is greater in amount than the value of the property pledged, and that there can be, therefore, no residue left to be paid to the truster. Otherwise, no insolvent could secure a debt to any extent unless the property pledged was sufficient in value to leave a residue to be returned to the insolvent. The most important distinction between a statutory general assignment and a mere contract of security is whether it was or was not the mutual agreement of the grantor and the beneficiaries.

There are some other incidental features of the record which are not controlling, and which we need not discuss. It appears that the debtor was at one time the owner of a 200-acre farm; that he deeded 50 acres thereof to his wife; that this deed was executed in 1903. Its consideration was money contributed by the wife to the purchase of the farm as a whole. Later, this farm became incumbered for a mortgage of $16,500 of the debtor's debts, and such mortgage covers the 50 acres owned by the wife. Shortly before the transaction under consideration, the defendant sold to his only son, 22 years of age, 110 acres of the farm, not including his homestead. The consideration therefor was the agreement of the son to assume the mortgage for $16,500. He also sold to him his personal property, and the son is working the farm. These transactions are relied upon to some extent as giving a color of fraud to the debtor's actions. None of these transactions have been assailed by any creditor, nor are they assailed in this action. The decree of the trial court set aside the instruments in question, on the ground heretofore indicated. Such decree did also incorporate a finding that the defendant-debtor was guilty of fraud. No such finding was made as to any beneficiary. The finding could have no effect upon the decree, and it is not apparent why it was incorporated therein. The fraud of the debtor, so far as the

evidence in the record discloses, was just such as might be imputed to any insolvent debtor who preferred one creditor to the hindrance of another.

We are of opinion that the instruments in question were intended, without doubt, as security for the beneficiaries therein named, and that the same were fully assented to by the beneficiaries before the execution, and were fully ratified afterwards, and before the beginning of this suit.

The decree below must, accordingly, be—*Reversed.*

DE GRAFF and WAGNER, JJ., not participating.

All the other justices concur.