HANNAH FRIEDMEYER, Appellant, v. ANNABELLE F. LYNCH
et al., Appellees.

No. 44529.

FEBRUARY 14, 1939.

REHEARING DENIED JUNE 23, 1939.

J. G. Myerly, for appellant.

Corwin Bennett, for appellees Annabelle F. Lynch, and Annabelle F. Lynch, O. E. Lynch, and Mary E. Miley, trustees.

J. W. Albert, guardian ad litem, for appellees, Oliver Lynch and Mary Eileen Lynch.

Gamble, Read & Howland, for appellees Bankers Trust Co., Bankers Trust Co., trustee, Wm. Knudson & Son, Wm. Knudson, Gifford Knudson and Vera Kunesh.

HALE, J.—Martin Flynn, a resident of Polk county, died testate in July 1906, leaving a widow, Ellen Flynn, who died some years later, and eight children—Thomas F. Flynn, Mrs. Katherine Brice, John M. Flynn, Mrs. Mary E. Miley, Frank P. Flynn, William V. Flynn, Edward J. Flynn, and Annabelle Flynn, who is now the wife of the defendant O. E. Lynch and the mother of the minor defendants Oliver Lynch and Mary Eileen Lynch. On April 14, 1906, said Martin Flynn had executed his will, and thereafter, on May 7, 1906, a codicil thereto. These were duly admitted to probate, the estate opened, and executors appointed and qualified.

After providing for the payment of debts and obligations, with an exception as to payment for improvements on a property known as the Flynn Block, in Des Moines, for which provision was made at another place in the instrument, the first eight paragraphs of the will made specific bequests of personal property to the wife and all the children except Annabelle. It next provided for the appointment of executors and trustees, and for successors to such trustees, with requirements as to

giving bond and making annual reports. The acting trustees at the time of trial were Annabelle F. Lynch, O. E. Lynch, and Mary E. Miley. Paragraph 11 of the will is a general residuary clause to the eight children.

This controversy has arisen over paragraph 10 of the will, which provides:

"(10) I hereby give, bequeath and devise to said Mrs. Ellen Flynn, Thomas F. Flynn, John M. Flynn, and Frank P. Flynn, said trustees and to their successors as trustees, in trust during the lives of all and any of my eight children, Thomas F. Flynn, Mrs. Katherine Brice, John M. Flynn, Mrs. Mary E. Miley, Frank P. Flynn, William V. Flynn, Edward J. Flynn, and Annabelle Flynn, for the purposes and upon the conditions hereinafter specified, the following property, to-wit:

"The Flynn Block, corner of West Seventh and Locust Streets in Des Moines, Iowa, including the real estate upon which the same is situated, being the West Half Lots One (1) and Two (2) of Block Twelve, original town of Fort Des Moines, now a part of the City of Des Moines, Iowa, together with all leases and appurtenances thereto. Also my life insurance, i. e., (describing the policies, and also describing certain securities and dividends). The purpose of said trust and the provisions and conditions imposed upon said trustees are as follows:

"a. Said trustees are directed to collect said insurance and said notes and said dividends and apply the proceeds to the payment of the indebtedness, if any shall exist at the time of my death, incurred in the proposed improvements of the Flynn Block, property above referred to, and in event of no such indebtedness existing, or in case of any surplus, the said proceeds or the surplus thereof, after payment of any other indebtedness existing, shall be divided equally among my children share and share alike.

"Said trustees shall have power and it shall be their duty to carry on and complete the proposed improvements of said Flynn Block, provided the said improvements are not completed during my lifetime, and to pay for the same out of the funds heretofore provided for that purpose, and in case of a deficiency to mortgage the said real estate for the balance.

"b. They shall have the power to rebuild the building or buildings thereon in case of destruction or damage by fire, storm

or otherwise, or at their discretion after twenty-five years, and to mortgage or encumber said real estate for the sums necessary for that purpose.

"They shall have power, and it shall be their duty to insure, keep in repair, lease, collect rents from, and pay taxes upon said premises during the continuance of the trust estate.

"c. They shall pay out of the net income of the said premises after the payment of said expenses of repairs, taxes, and other necessary expenses, three-fourths part thereof annually, except as provided in paragraph (d) of this section of this will, to Mrs. Ellen Flynn, my wife, during her lifetime, and one-fourth part of said net income annually, except as provided in said paragraph (d), to my daughter Annabelle Flynn or her heirs during the continuance of the trust herein imposed.

"The said provision for my said wife, Mrs. Ellen Flynn, is to be received by her in lieu of dower in connection with the bequest provided for in section one above.

"Upon the death of Mrs. Ellen Flynn, her three-fourths part of the said net income shall be paid to my said eight children above named, share and share alike, or to their heirs, until the termination of the said trust, except as otherwise provided in paragraph (e) hereof. .

"d. In case there should remain any indebtedness against said property incurred in the improvements thereon either before or after my death, after the application of the funds provided for that purpose, the trustees are directed to pay the said indebtedness out of the income of the said property at such times and in such payments as they shall think best, providing however, that the said payments shall not at any time, reduce the income of my wife, Ellen Flynn to less amount than $3,000.00 per annum and shall not reduce the income to be paid to my daughter Annabelle Flynn to less than $2,000.00 per annum, and my daughter Annabelle shall not, in such case be held to account to my wife or to the trustees for any proportional over payment out of said income, it being my intention that her income should not fall below $2,000 per annum, except that in case said net income in any year is less than $5,000.00, it should be divided in proportion of three-fifths to my wife and two-fifths to my said daughter Annabelle.

"e. Upon the death of Mrs. Ellen Flynn her income from the trust estate shall in the first instance be applied to the

payment of any indebtedness that may at that time exist against the said Flynn Block and shall then revert in equal shares to the heirs of said Ellen Flynn during the existence of said trust.

"f. Upon the death of all of my said children above named, the said trust shall terminate, and the trust estate shall be closed, and all the interest and estate of the said trustees in said trust property shall be extinguished, and the property shall revert and descend to the legal heirs of my said children.

"Upon the termination of the trust estate, the trustees shall file their final report, subject to the action of the proper probate court as to approval and discharge."

The codicil adds to the trust estate certain lands in Polk county, with the power granted to sell the same and use the proceeds in payment of any indebtedness created for the purpose of improving the Flynn Block, or any indebtedness which may be a lien thereon.

The widow, Mrs. Ellen Flynn, elected to take under the will and died some years after her husband.

On August 15, 1936, the plaintiff herein recovered a judgment in the district court of Polk county, Iowa, for the sum of $7,939.57, with interest and costs, against the defendants Annabelle F. Lynch and O. E. Lynch.

The petition in this action was filed December 21, 1936, and in such petition plaintiff sets out the facts as above given, and states that in the event that the whole will should not be held void that portion in relation to the trust estate is in violation of the statute against perpetuities. It claims that by the terms of the will Annabelle F. Lynch was vested with an undivided 1/8 interest in the trust estate, and also a 1/4 interest in the net income from the trust property and a 1/8 interest in the remaining net income, subject only to the provisions and limitations imposed by paragraphs d and e of said will; and that she is the owner of 11/32 of the net income of the Flynn Block, and at least the income to the amount of $2,000 per annum during the continuance of the trust and after its termination is the owner of an undivided 1/8 interest, and that her interest is subject to attachment and execution. Plaintiff further asks for an accounting as well as judicial interpretation, and that the interest of the said Annabelle F. Lynch be held subject to plaintiff's judgment, or so much thereof as may be necessary to

satisfy said judgment and costs. To this claim of plaintiff made in her petition and the various amendments thereto the defendant Annabelle F. Lynch and the defendant trustees filed answer admitting the matters set out heretofore in the statement of facts and denying generally all other allegations; and alleged that on or about July 22, 1936, the defendant Annabelle F. Lynch assigned to the Bankers Trust Company as trustee for various named creditors, not including plaintiff, all sums of money to be paid to her under the will of Martin Flynn, and on July 17, 1936, executed a trust agreement assigning to the Bankers Trust Company, trustee, said rents and income, with a supplemental agreement or assignment between Annabelle F. Lynch and the Bankers Trust Company of date July 29, 1936. The defendant Bankers Trust Company and the other defendants, Wm. Knudson & Son, William Knudson, Gifford Knudson, Bankers Trust Company, and Vera Kunesh, also answered alleging the execution of the trust agreement or agreements, and claiming that any claim of the plaintiff is junior and inferior to the rights of said Bankers Trust Company as trustee. A guardian ad litem was appointed for the two minor defendants and filed answer. Plaintiff, in reply to this claim of certain defendants under the assignment mentioned, alleged that as to the assignment or assignments, if any delivery thereof was made it was made long after the dates thereof and after the plaintiff had acquired her lien on any interest or rights of the said Annabelle F. Lynch in the controversy by reason of plaintiff's judgment, and that the assignments referred to were for the purpose of hindering and delaying the plaintiff in the collection of her claim, and that all of the defendants and all the parties for whom the Bankers Trust Company purported to be acting as trustee, had full notice and knowledge of such wrongful and unlawful purpose.

The claim of plaintiff may be thus summarized: (1) That the will of Martin Flynn invokes the rule in Shelley's case; (2) that if the rule in Shelley's case is not applicable, the will violated the statute against perpetuities, and therefore the right to the net 1/4 of the income of said real estate and the additional 1/8 of the mother's net income, constituting 11/32 of the net income, was an equitable interest in the real estate and under the will passed to the heirs of the said Annabelle F. Lynch at her death; (3) that it was hers to sell or dispose of

and was subject to her debts; (4 and 5) that the assignment to the Bankers Trust Company was void for fraud, and that the plaintiff had no notice thereof; all of which claims are denied by the defendants.

On trial to the court a decree was entered January 14, 1938, upholding the contention of defendants and finding that the rule in Shelley's case does not apply, that the will does not violate the statute of perpetuities; finding the assignment to the Bankers Trust Company valid, and granting plaintiff a lien for the security of her judgment on the portion of the net income accruing to Annabelle F. Lynch under the will, but subject and junior to the trust agreement and assignment to the Bankers Trust Company.

From this decree plaintiff appeals.

The above lengthy statement of the case is necessary to show the nature of the trust set up by the will of Martin Flynn and the attack made by the plaintiff, not only upon the assignment but upon the will itself.

It is apparent from a reading of the will, especially of clause 10 thereof, that the testator had a deep interest in the property known as the Flynn Block, and throughout he made full provision for its maintenance and repair. It was intended to be a principal source of income for his widow and then unmarried daughter, and during their lives and the lives of his other children it was to be maintained, repaired, and, after a period, rebuilt if necessary. To this end the trustees were given considerable discretion and directed as to many duties, and until the death of the last of the children of the testator these trustees and their successors were required to continue in the performance of such duties. If the intent of the testator may be considered in connection with this trust, and we think it should be, it seems clear that he intended no interest in said property should accrue to his daughter other than the right to all or a part of the net income.

That the rule in Shelley's case applied to wills as well as to deeds is true, but wills are to be construed more liberally than deeds. If the intent of the testator, certainly or by implication, appears to create a life estate, then the rule does not apply. This question was fully discussed in the case of Westcott v. Meeker, 144 Iowa 311, 122 N. W. 964, 29 L. R. A. (N. S.) 947. See, also, Harlan v. Manington, 152 Iowa 707, 133 N. W.

367; Williams v. Williams, 157 Iowa 621, 138 N. W. 480. And in cases where a trust is created the rule in Shelley's case has no application. Hibler v. Hibler, 208 Iowa 586, 588, 226 N. W. 8, 9.

The legislature in the year 1907 abrogated this rule which had theretofore been in force in this state. The repeal had no retrospective effect, and so this will, if the rule were actively invoked by its terms, would be unaffected by the statute. But at best the rule was a "legal fiction, which often, if not usually, operated to thwart the real intent of grantors." Hibler v. Hibler, supra. The creation of a fee instead of a life estate with remainder over cannot occur where the plain intent of the testator, as gathered from the will, is to the contrary, nor where a trust is created. This has long been the rule in Iowa. Nor can the use of the technical word "heirs" operate to bring even a conveyance within the rule "if, from the language used * * * and the circumstances * * * it appears that the maker used the word 'heirs' to mean children. * * *." Harris v. Brown, 184 Iowa 1288, 1292, 169 N. W. 664, 666, and cases cited.

Much time is devoted by plaintiff and many authorities are cited in support of her views, but they have little application to the particular will in question. We think the plain meaning of the will, as gathered from its various parts, and the meaning of paragraph 10 above, is sufficient to warrant the court in holding that the rule in Shelley's case does not apply, and that Annabelle F. Lynch was not under the terms of said will the owner of the fee.

II. Plaintiff urges that this will offends the doctrine of the law relating to perpetuities.

"Every disposition of property is void which suspends the absolute power of controlling the same, for a longer period than during the lives of persons then in being, and twenty-one years thereafter." Code of 1897, sec. 2901, Code of 1935, sec. 10127.

The only Iowa case cited in support of this proposition is Bankers Trust Company v. Garver, 222 Iowa 196, 268 N. W. 568. A reading of the cited case is sufficient to convince that it has no application to the case. There was a void limitation which was within the rules of the statute on perpetuities. This part of the will was held invalid, but that part of the trust established by the will which permitted holding the property

by the trustees and which more nearly corresponds to the provisions of the Flynn will, was held by the court to be a valid provision. It is clear that the Flynn will suspends the power of controlling the property during the life of persons now in being only until the time it passes to the heirs. The statute against perpetuities does not apply.

III.   The plaintiff challenges the validity of the assignment and the supplemental assignments and agreements referred to in the statement of the case.

The trust agreement in question was executed *July 17*, 1936, and therein the defendant Annabelle F. Lynch and her husband O. E. Lynch, in order to take care of debts due various creditors, assigned to the Bankers Trust Company, as trustee, all the interest of Annabelle F. Lynch in and to all sums of money to be paid to her by the trustees of the estate of Martin Flynn, and authorized the trustees of the Flynn estate to pay all such sums over to the Bankers Trust Company as trustee. There follows a recital of the indebtedness due the various creditors, including therein the Des Moines Morris Plan Bank and Thrift, Incorporated. Also the trustee was directed to pay certain promissory notes, two of which, in the sums of $1,000 and $500, were due to the Bankers Trust Company; also one of $6,000 to Katherine M. Brice, another of $1,200 to the same person, one of $6,000 to Mary Brice, one to William Knudson & Son of $2,000, and one to Vera Kunesh of $1,191.02. The instrument further provided the various percentages which should be paid to these different creditors, and that if any one creditor was paid in full while there remained an unpaid balance to another, the balance should be distributed among the remaining creditors. The instrument further made provision that in the event of payment of all these obligations the rights of the trustor under the will of Martin Flynn should cease and the trust terminate. The remaining provisions of this instrument provided that the trustee assumed no responsibility, should not be liable for acts or omissions done in good faith, and various other provisions for the protection of the trustee.

The second instrument in the assignment was dated July 22, 1936, and was merely an assignment to the Bankers Trust Company of the rights of Annabelle F. Lynch as before stated, commencing on the 17th of July 1936, and continuing until the trust agreement should be accomplished and carried out.

It contained a direction to the trustees of the estate of Martin Flynn to pay all sums that became due to Annabelle F. Lynch to the Bankers Trust Company as trustee. Notice of this second instrument was acknowledged by two of the trustees of the estate of Martin Flynn, namely O. E. Lynch and Annabelle F. Lynch.

An amendment was made to the trust agreement, which amendment was dated July 29, 1936, changing the amounts due to some of the creditors, and to correct errors in the former trust agreement.

Plaintiff urges that all these agreements or attempts at disposition of the interest of Annabelle F. Lynch are invalid and fraudulent.

Plaintiff urges that this instrument was of the class which requires recording to render it valid against existing creditors without notice, under the provisions of section 10015 of the Code of 1935. But this contention has not been upheld under the decisions of this court. The case of Farmers Trust & Sav. Bank v. Miller, 203 Iowa 1380, 214 N. W. 546, cited by plaintiff, was for foreclosure of a mortgage on unmatured crops, and the mortgage was duly recorded. It has no application to the case at bar and involves an entirely different question as to priority between the mortgagee and purchaser of the crops. Our court has heretofore held that an assignment of an interest in promissory notes not in the possession of the assignor is not such an assignment as comes within the provisions of section 10015 of the Code of 1935 (sec. 1923, Code 1873). Howe & Co. v. Jones, 57 Iowa 130, 8 N. W. 451, 10 N. W. 299.

Plaintiff also urges that this is a general assignment. But such contention cannot be upheld as the instrument does not purport to be such and, so far as we find from the record, there is no evidence to show that all the property of the defendant Annabelle F. Lynch was in fact transferred. Nor if such complete transfer were made would such fact be controlling.

In the case of Eicher v. Baird, 204 Iowa 188, 195, 215 N. W. 236, 240, the holdings of the court on this question are recapitulated:

"We have never held any instrument of security to be a general assignment, if not purporting to be such, and if made

with the knowledge and consent of all the beneficiaries in advance, or accepted and ratified by them afterwards. * * *

"Nor is the fact controlling that the insolvent debtor pledges *all* his property. * * *

"Nor is it a controlling fact that the transfer is made to a trustee, rather than to the creditor personally. * * *

"Nor is it a controlling fact that the debt secured is greater in amount than the value of the property pledged, and that there can be, therefore, no residue left to be paid to the truster."

If it be assumed that the various preferred creditors did not assent to the transfer to the trustee prior to the execution of the assignment, still we think the record shows that thereafter there was a ratification by each of the benefited creditors, and the transaction would not be a general assignment for the benefit of creditors and would not have to be for the benefit of all.

There is little question raised that a debtor may prefer creditors. The courts have gone so far as to hold that the creditor may accept security, even though he is aware that the purpose of the debtor in giving it is to hinder, delay, and defeat other creditors. It is not disputed in this case, and the evidence shows, that the intent of the assignor was thus to prefer certain creditors. Among the more recent decisions of this court cited in connection with this question are Williams Sav. Bank v. Murphy, 219 Iowa 839, 259 N. W. 467; Steffy v. Schultz, 215 Iowa 837, 246 N. W. 910; Jordan v. Sharp, 204 Iowa 11, 214 N. W. 572; Eicher v. Baird, supra; and Steinfort v. Langhout, 170 Iowa 422, 433, 152 N. W. 612, 616, which is cited by the plaintiff.

There can be no question that a fraudulent intent to dispose of property by an assignment given to one or more creditors for the express purpose of hindering, delaying, and defrauding other creditors, would be invalid when the assignee takes not only with knowledge but by participating in the fraud. In the case cited, Steinfort v. Langhout, supra, the evidence clearly showed that the defendant not only knew of the purpose of the assignor but was an active participant in the fraud and intended to hinder, delay, and defraud creditors. But, so far as the record shows, none of the persons in this action participated in any way in an attempt to defeat the claims of other

creditors. Nor do we think there is any evidence indicating that they had any knowledge thereof. It is true that the Bankers Trust Company knew that it was made a preferred creditor, but we do not think the evidence shows that there was any active participation in or any knowledge of any fraudulent intent on the part of the assignor, nor any evidence of bad faith, such as to prevent the acceptance of the trust and the benefits accruing to said trust company, and in good faith securing their own claim.

As laid down in the above-cited case, Steinfort v. Langhout, the rule is:

"Where the sale is made to a creditor of the alleged fraudulent vendor, and is made in satisfaction of a bona fide debt, and is done in good faith, in payment of the debt, other creditors cannot complain, even though it appear that the vendor had a fraudulent purpose in making the transfer, and even though the vendee knew of this fraudulent purpose. This rule is founded on the fact that a creditor had a right to take security for, or payment of, a just debt, even though he knew at the time that his vendor had a fraudulent purpose in making the payment at that particular time. But to this there is an exception, that if the purchaser, though a bona fide creditor, knows of the fraudulent intent of his vendor or mortgagor, and, with such knowledge, takes the conveyance not in good faith, for the purpose of securing or paying his debt, but for the purpose of aiding his vendor or mortgagor in his effort to defraud other creditors, he cannot be protected. The rule generally is stated this way: A creditor who acts in good faith may take security from his debtor or a conveyance of his property in payment of a bona fide debt, even though he knows that there are other creditors, and that the effect of the debtor's action will be to defeat them, and he is protected in such case, even though he knows the debtor is prompted by a fraudulent intent. But the rule stated farther is that the creditor must act in good faith; * * *." (Citing Iowa cases.)

To the same effect, see the cases cited above.

For a more recent discussion of the principles involved in such transfers or assignments, see Williams Sav. Bank v. Murphy, supra, and the cases cited therein.

We hold that there is no evidence showing the participa-

tion of either the defendant beneficiaries or the defendant Bankers Trust Company in any fraud so as to void the operation of the trust agreement. That there was ratification in each case by the various creditors benefiting under the trust agreement is also shown by the evidence and the exhibits offered on the trial. In each case the creditors transmitted their notes to the trustee, accepted the benefits, and, by word or action, agreed to the terms of such trust. It is sufficient to say that in each case there was an acceptance of the conditions of the trust.

Our conclusion must be that there does not appear to be such a fraudulent transaction as would warrant the court in setting it aside.

Other matters are argued but relate more to evidence, and need not be considered here.

The provisions of the decree make the plaintiff's judgment second and inferior to the rights of the beneficiaries under the trust agreement, and we must so hold.

The decree of the lower court is affirmed.—Affirmed.

HAMILTON, STIGER, SAGER, BLISS, OLIVER, and MILLER, JJ., concur.