## GLENN v. GLENN et al.

1. **Depositions:** NOTICE. A notice to take depositions having been served upon the attorneys of record of two of the defendants, they cannot object to the depositions on the ground that other co-defendants were not served.

2. **Fraud:** CONVEYANCE OF REAL ESTATE. A conveyance of real estate made and received for the purpose of delaying or defrauding creditors, is, as to such creditors, void.

3. —— The badges of fraud in the sale of real estate considered and discussed.

*Appeal from Jefferson District Court.*

SATURDAY, DECEMBER 10.

IN EQUITY: FRAUDULENT CONVEYANCE. On the 10th day of November, 1860, John M. Glenn, for the professed consideration of $5,040, conveyed to his two sons, James Glenn and Henry Glenn, a large and valuable farm, known

as " the Glenn farm." At the same time, he conveyed to these sons a large amount of personal property by bill of sale absolute, for the professed consideration of $856. At this time the defendants, Andrew J. Davis and Christian. Berger, were severally creditors of the said John M., and notice of the commencement of their suits to recover judgment was served upon him the *same day* the above conveyances were made to his sons. Davis and Berger, in due course, recovered judgments against John M., in December, 1861.

In March, 1862, James and Henry Glenn (the above named grantees of the father) conveyed *parts* of the Glenn farm, thus deeded to them, to the plaintiffs, Charles T. Glenn and Edward J. Smith; the said Charles being another son, and the said Edward the son-in-law, of the said John M. Glenn. In September, 1862, the said Charles T. Glenn and Edward J. Smith commenced this suit in the District Court of Jefferson county, making James and Henry Glenn, John M. Glenn and wife, and Davis and Berger, defendants, alleging their purchase of part of the Glenn farm, in March, 1862, from James and Henry, and setting up a mistake as respects one tract in the deed of November 10th, 1860, from John M. Glenn and wife to James and Henry, and averring that Davis and Berger threaten to levy upon and sell, not only the tract as to which there was a mistaken description, but also the other lands.

The petition prays that John M. Glenn and wife may be decreed to correct the mistake, and that Davis and Berger be enjoined from selling any portion of plaintiffs' land on their executions.

Davis and Berger answered, alleging that the deed from the father to his two sons of November 10th, 1860, and the deed from these to the plaintiffs, were fraudulent, and making the answer " a cross-bill," pray that their judgments be declared liens upon the whole land conveyed by John M.

Glenn. Testimony was taken, and upon the trial the mistake was corrected, as asked in the plaintiffs' bill, but the conveyances above named were adjudged fraudulent, as asked in the cross-bill of Davis and Berger, whose judgments were declared liens upon all of the lands conveyed by John M. to his two sons by the deed of November 10th, before referred to.

From this portion of the decree the plaintiffs appeal. The adversary parties are, therefore, Charles T. Glenn and Edward J. Smith, on the one side, and Davis and Berger on the other.

The questions made, as well as the other necessary facts, will appear in the opinion.

*Negus & Culbertson* for the plaintiffs.

*Slagle & Acheson* for Davis and Berger.

DILLON, J.—I. On behalf of Davis and Berger, notice to take depositions was duly served by the sheriff upon

1. DEPOSI-TION; notice. the attorneys of record (Negus & Culbertson) of Charles T. Glenn and Edward J. Smith, who afterward moved to suppress the depositions, because no notice had been served upon the other Glenns, parties to the proceeding.

The answer to the objection is obvious. The notice having been properly served upon the attorneys of record of the parties who moved to suppress it, *they* could not object to the deposition because some one else had not been notified.

II. Davis and Berger are admitted to be *bona fide* creditors of John M. Glenn, and the principal question in the

2. FRAUD: conveyance of real estate. case is, whether the conveyances before named were or were not fraudulent as to creditors. There is no dispute as to the rules of law which apply. The contest is as to the facts; and these depend upon the

testimony. If the conveyances from the father to his sons, and from the latter to the plaintiffs, were made and received for the purpose of defrauding or delaying creditors, they are, as to them, void.

Were they so made and received? From the pleadings and evidence the following facts, most of them being badges or signs of fraud, are satisfactorily shown:

1. That John M., the father, was in greatly *embarrassed circumstances*, and was unable to pay his debts. He had been, or was about to be, pressed by his creditors. These facts are admitted in his answer, and he there further admits " that he was compelled to sell his property at private sale, or have it sacrificed at forced sale." There were, then, in the very nature and circumstances of his situation, strong *motives* to make a sham or fraudulent transfer of his estate. That these motives prevailed, and that the transfer was of this kind, further appears —

2. By the *time* when it was made. It was made on the same day that Davis and Berger brought their suits. If it was not, as in *Twyne's case*, made *pending suit*, it was made in anticipation of actions being brought. There is no evidence to show that Davis and Berger had knowledge of the conveyance to the sons when they brought suit, or that they brought these actions in consequence of any information of this character. There is evidence tending to show that the conveyance in question was made after the service of notice. This point, in view of the evidence, is not controllingly material, and need not detain us.

3. The nature and purposes of the transfer are also evidenced by the amount of property conveyed. It comprised *all* of his estate, or substantially all, *both real and personal*. The design of the parties is further shown —

4. By the *relationship* between them, and the *pecuniary circumstances* and legal irresponsibility of the purchasers. They were his sons. The professed consideration for the

purchase of the land was $5,040; for the personal property, $856. This was a large amount of property. It was sold wholly *on credit.* No money, or, at most, only a small and colorable amount, passed. One of the sons was a *minor*, and, therefore, legally irresponsible, and both are shown to be persons almost wholly without means or property, worth $100 or so, according to the testimony of the witnesses. Notwithstanding this, *no security*, by way of mortgage or otherwise,. was taken—simply the notes of the sons, running from one to five years. These are not the signs and credentials of a *real* sale, but, rather, the badges and distinctions of an unreal or fraudulent one. The plaintiffs (Smith and Charles T. Glenn), likewise relatives, and grantees subsequently, of part of the property, were also men of no means. In 1860, Smith, who professed to give $2,000 for his land, was assessed with no realty, and with only $62 of personalty, and Charles with only $218 of personal estate, and land to the amount of $541, which was the year before assessed to his father. In addition to these circumstances, the plaintiffs are further connected with the fraud by the circumstances testified to by Miller. Miller was a creditor, and, it seems, a former partner, of John M. Glenn. He wished payment. The father directed him to go to his son Charles. He went, and obtained in payment of his debt against the father, "a note on Smith (one of the plaintiffs) to the amount of six hundred dollars." He also obtained, to secure it, "a mortgage on a piece of land (part of the Glenn farm) of Smith." It is a significant circumstance that these papers were all ready and delivered to Miller in the absence of Smith. No explanation is given why Smith and his property should thus be controlled by and for the benefit of the father. The reasonable inference is, that it was held in secret trust for him. "Fraud," it is said, in *Twyne's case,* "is always apparelled and clad with a trust."

5. Another consideration of much weight is, that not-

withstanding the circumstances thus attending the transfers in question seem to require explanation, if any could be given, yet neither the father nor any of the sons or the son-in-law have become witnesses. If they could truthfully have testified to facts showing the *bona fides* of the conveyances in question, the reasonable presumption is that, being competent witnesses, they would have done so. Where the circumstances are so suspicious as those above specified, the failure by the plaintiff to offer explanatory or rebutting evidence, thus clearly within their power had it existed, makes strongly against them. *Blatch* v. *Archer*, Cowp., 65, per Lord MANSFIELD.

Perhaps no one of the badges or signs of fraud above mentioned would singly have been sufficient; but their united effect, unexplained, is to satisfy us that the sale by the father was a mock transfer, or, at least, one made to delay creditors, and that the land is held by the plaintiffs and the other sons subject to the just claims of Davis and Berger.

Affirmed.