ELIZABETH STEFFY, Executrix, Appellee, v. CARL C. SCHULTZ, Appellee; MARTHA SCHULTZ, Appellant.

No. 41500.

FEBRUARY 14, 1933.

Tobin, Tobin & Tobin, for appellant.

T. A. Lane and Talbott & Talbott, for appellee.

MITCHELL, J.—Carl C. Schultz has taken no part in this appeal, and we shall in this opinion refer to Martha Schultz as the appellant and to Elizabeth Steffy as the appellee.

On the 14th day of May, 1931, the appellee procured a judgment in the district court of Iowa in and for Poweshiek County against Carl C. Schultz, for the sum of $9,532.37, plus interest and costs. The appellee also secured a decree of foreclosure against a 74-acre farm in Poweshiek County.

At the time the cause was tried, Carl C. Schultz was the owner of the following described real estate situated in Iowa County, Iowa, to wit, the West Half of the Southwest Quarter of Section 14, in Township 79 North, Range 12 West of the Fifth P. M., and also the East Half of the Northeast Quarter of Section 22, Township 79 North, Range 12 West of the Fifth P. M. This action was to set aside and cancel the conveyance made by Carl C. Schultz to his wife Martha Schultz, and to subject the above-described real estate to the payment of said judgment.

The case turns largely, if not wholly, upon the facts. The record shows that the basis of the appellee's claim against Carl C. Schultz, grantor in the deed in question, was a deficiency judgment. In 1920 Carl C. Schultz purchased 74 acres of land in Poweshiek County for $14,800. He paid part cash and borrowed from Samuel Steffy the sum of $9,000. Samuel Steffy died shortly thereafter, and the appellee was appointed executrix of his will. Carl C. Schultz executed a note in the amount of $9,000 to Samuel Steffy, and to secure said note gave a first mortgage on the 74 acres of land in Poweshiek County. Thereafter Carl C. Schultz sold the land to his sister Minnie, who assumed and agreed to pay the mortgage. Minnie Schultz later gave a note and mortgage signed only by her to Mrs. Steffy, and Carl's mortgage was released. Later there was a dispute in regard to whether Carl was released. Action was brought by the appellee against the said Carl C. Schultz to reinstate the mortgage indebted-

ness against him. The district court of Poweshiek County granted that relief. On the 23rd day of May, 1931, the district court of Poweshiek County entered judgment in the amount of $9,532.37, plus interest and costs, against Carl C. Schultz, and entered decree of foreclosure of the mortgage against the 74-acre farm in Poweshiek County. The appellee sold under special execution the 74 acres of mortgaged real estate, and it was bid in by the appellee for $4,743.28, leaving a deficiency of $4,867.74. At the time the judgment was entered, Carl C. Schultz was the owner of the following described real estate, to wit, the West Half of the Southwest Quarter of Section 14, in Township 79 North, Range 12 West of the Fifth P. M., and also the East Half of the Northeast Quarter of Section 22, Township 79 North, Range 12 West of the Fifth P. M., in Iowa County, Iowa. On the 29th of May, 1931, the appellee caused the judgment which she secured in Poweshiek County to be transcripted to Iowa County, and on the 31st day of August, 1931, the appellee commenced this action, alleging that the transfer of the real estate above described by Carl C. Schultz to his wife Martha Schultz was "without consideration and for the purpose of hindering and delaying the plaintiff in the collection of her judgment, and for the purpose of defrauding his creditors, including this plaintiff." In the trial of the case the appellee used as her principal witnesses Carl C. Schultz and Martha Schultz, and she relies upon the testimony of these two witnesses to prove her case.

This court, in the case of Harvey v. Phillips, reported in 193 Iowa, page 231, said:

"The plaintiff placed both defendants on the stand as his witnesses, and relies almost entirely upon their testimony, to show the intent and the alleged fraudulent purpose in making the conveyances. By placing the defendants on the stand as witnesses, to a certain extent he vouches for their truthfulness, and he may not impeach them, although, of course, he may contradict, and may rely upon the proper inferences to be drawn from the circumstances testified to by them. Under such circumstances, we may not construe their evidence only as it is against the defendants, but must construe it as well in their favor. In other words, the evidence must be taken all together. Generally, fraud is not presumed, and ordinarily, in a civil action, only a preponderance of the evidence is required: but

still, to establish the evidentiary facts of bad faith, the proof must be clear, satisfactory, and convincing."

In the case at bar we must look to the testimony of Mr. and Mrs. Schultz. There is no dispute in the record that Mr. Schultz owed to his wife, Mrs. Schultz, at the time the transfer was made, the sum of $1,918.01. This indebtedness grew out of certain loans which Mrs. Schultz made to her husband, and the assuming by Mrs. Schultz of a $600 note which her husband owed to his brother, Fred H. Schultz. The Schultzes were married in 1925. Prior to her marriage Mrs. Schultz had been a practical nurse, had earned money and saved it. In addition to that, she inherited certain money. These loans were made by Mrs. Schultz to her husband, Carl C. Schultz, at various times during their married life. The testimony shows that they were loans, and that the husband at all times intended to repay his wife the sums of money which she loaned him. These loans were not made over a long period of time, but over only a few years. The money belonged to Mrs. Schultz; she loaned it to her husband, and he intended to repay it. There is no dispute in the record in regard to these facts. Mrs. Schultz knew all about the Steffy suit, attended the trial, and was present at the time that the court indicated its holding and ruling in the matter, and she knew the outcome of the case and that judgment was to be rendered against her husband.

Carl C. Schultz also owed certain money to one G. H. Meyer, and on Sunday afternoon preceding the 23rd of May, 1931, Meyer went to the Carl C. Schultz farm and talked to Carl about Carl's giving Meyer a mortgage to protect him for the money which Carl owed to Meyer. Meyer knew about the judgment that the Steffys had secured in Poweshiek County, and Meyer thought that he might lose everything if he did not secure some security for his loan. Mrs. Schultz, the appellant in this case, was present and heard the talk between Meyer and her husband. Shortly after Mrs. Schultz had heard the conversation between her husband and Meyer, Mrs. Schultz suggested to her husband that he ought to give her something for protection for the money which she had loaned him. This matter was discussed between Mr. and Mrs. Schultz on several occasions before the deed was made. A few days later, Mr. and Mrs. Schultz and Mr. Meyer drove over to Vinton, where Mr. Schultz gave a chattel mortgage on his personal property to Mr. Meyer, and execu-

ted a deed, covering the real estate above described, to Mrs. Schultz. The deed was delivered to Mrs. Schultz and the chattel mortgage to Mr. Meyer. Mr. Meyer took the chattel mortgage to the county recorder's office and had it filed, and Mrs. Schultz took the deed to the county recorder's office and had same duly recorded on the day that it was executed, to wit, the 23rd day of May, 1931. The record shows that all the property Carl C. Schultz had was the personal property on which he gave the chattel mortgage to Meyer, and the farm which he deeded to his wife. The appellee in this case brought an action to set aside the Meyer chattel mortgage. It was consolidated with this case in the district court for the purposes of trial, and the district court found in favor of Meyer and held that the chattel mortgage was good. No appeal was taken from that case. There is not a particle of evidence in the record that either Carl C. Schultz or Mrs. Schultz had any intent to hinder, delay, or defraud the creditors of Carl C. Schultz. The appellee seems to think that because Mrs. Schultz knew of the judgment which was secured by the appellee in Poweshiek County there was some fraud connected with the transaction on that account. Mrs. Schultz did know of it. She knew that the only property her husband had was the personal property upon which he had agreed to give Meyer a chattel mortgage, and the farm upon which they lived. The record is clear that her husband owed her the $1,918.01. It seems to us that the natural thing for Mrs. Schultz to do, knowing of the big judgment which had been rendered against her husband in Poweshiek County, and knowing that he was giving a chattel mortgage upon his personal property, was to ask for protection for the money which she had loaned to her husband. This is exactly what she did. She suggested it to her husband. The deed was given her in payment of her husband's indebtedness to her. Except for this deed he has not paid her any money or given her any property. The fact that the conveyance resulted in a preference to one creditor, or that the grantor is insolvent, does not invalidate the transaction. This court, in the case of Jordan v. Sharp, 204 Iowa, page 11, said:

"That a creditor may take security for debts due him even though he is aware that the purpose of the debtor in giving it is to injure, delay, and defeat and thus defraud other creditors, is well recognized in this state. See Chase, Merritt & Blanchard v. Walters, 28 Iowa 460; Kohn Bros. v. Clement, Morton & Co., 58 Iowa 589;

Southern White-Lead Co. v. Haas, 73 Iowa 399; Richards v. Schreiber, Conchar & Westphal Co., 98 Iowa 422. But, if the creditor knows of the fraudulent purpose of the debtor and accepts the mortgage wholly or in part to aid in accomplishing it, he participates in the wrong, and the mortgage is fraudulent against creditors although it was only on a reasonable amount of property to secure a valid debt. Headington v. Langland, 65 Iowa 276; Crawford v. Nolan, 70 Iowa 97; McCreary v. Skinner, 83 Iowa 362; Clark v. Raymond, 86 Iowa 661; Richards v. Schreiber, Conchar & Westphal Co., supra. If the indebtedness existed, as claimed by Mrs. Sharp, she had the same right as any other creditor to secure or receive payment of said indebtedness by this conveyance, provided that she did not participate in the intent on the part of the husband to defraud creditors."

What happened in the above-quoted case is exactly what happened in the case at bar. Mr. Schultz transferred to his wife, a bona-fide creditor, property in satisfaction of her debt, and there is no showing in the record that she participated in any intent on the part of her husband to defraud his creditors; nor is there any showing in the record that Mr. Schultz had any intent to defraud his creditors.

The appellee also raises the question that the property transferred was in excess of the amount of the indebtedness which the husband, Carl C. Schultz, owed to the appellant, Martha Schultz. The record shows that the farm consisted of two eighty-acre tracts of land, bounded by a highway on two sides, and that there were several acres taken out for road purposes, which would reduce the acreage in the farm. There was a first mortgage on the land, which, at the time of the conveyance, had been reduced by payments of installments until there remained unpaid the principal sum of $7,835.92. The evidence of the appellant shows that the fair market price of the farm per acre was $50. There is some testimony in behalf of the appellee that the farm was worth approximately $75 per acre. The record shows that the land was not the best on the Schultz farm. The appellee argues that because Carl C. Schultz paid $15,000 for it and built a $7,000 house upon it in 1915, the court should not "fix the value by the opinions of farmers in the neighborhood who are discouraged by the present low value of farm products, and are basing their judgment of values entirely upon a condition which common sense will demonstrate to be a temporary thing." The ap-

pellee desires this court to follow the "common sense rule of farm values" as above quoted; but, in fixing the value of the Poweshiek County farm, which the record shows was bought for $14,700, the appellee, when it came to fixing the value of the farm at the sale under the special execution, bid it in for a little less than $5,000. In other words, the appellee thought that land values had decreased in Poweshiek County to where they were worth only one-third of what they were a few years before; but in Iowa County the appellee wants a different rule established, and wants it held that farm land such as the Schultz farm has not depreciated in value to any great extent. This court will take judicial notice of the depreciation in land values. The record clearly shows that there was no transfer of valuable property for a grossly inadequate consideration. The consideration is proved. The question of consideration is definitely and satisfactorily established. There is no proof of fraud, or of fraudulent design on the part of the grantor. There is no proof that Mrs. Schultz obtained this deed of conveyance in any way by any improper motive, purpose, or intention. It therefore seems to us that there was a fair consideration for this deed, and that it was not made in fraud of creditors. Under the record, we think that the decree of the district court ought to be reversed. It is reversed, and the petition dismissed.—Reversed.

All Justices concur.