**Bert ROUSE, Plaintiff-Appellant,**

**v.**

**Eldon ROUSE & Daisy Rouse, Defendants-Appellants,**

**Farmers Cooperative Elevator Company of Ruthven, Iowa, Defendant-Appellee,**

**R. O. Miller, Sheriff of Palo Alto County, Iowa, Defendant,**

**Alvin Rouse, Intervenor-Appellant.**

**No. 53616.**

Supreme Court of Iowa.

Feb. 10, 1970.

Arthur W. Smith and Hanson & Bormann, Emmetsburg, for appellant Bert Rouse.

Linnan, Lynch & Straub, Algona, for appellants Eldon and Daisy Rouse.

Fitzgibbons Bros., Estherville, for appellee.

Cornwall, Avery & Berg, Spencer, for intervenor-appellant.

RAWLINGS, Justice.

Judgment debtors, and their security holding relatives, appeal from trial court's decree overruling their objections to appointed receiver's report, and according priority to a judgment creditor's lien. We affirm in part, reverse in part.

May 26, 1967, Farmers Cooperative Elevator Company of Ruthven, Iowa, obtained judgment for $9,927.58, in cause No. 18533, against Eldon and Daisy Rouse.

June 10, 1967, those judgment debtors executed promissory notes, security agreements, and financing statements apparently encumbering all personalty owned by them. These instruments, recorded June 12, 1967, served to secure payment of $15,-000 to Bert and $4000 to Alvin Rouse, they being Eldon's father and brother, respectively.

The judgment creditor caused three executions to issue, the first June 13, the second October 10, 1967. Though not released on demand, they were later returned unsatisfied.

December 1, 1967, a third execution issued. Thirteen days later a release demand was given. This time the elevator company elected to proceed and, on notice, filed an indemnifying bond. (section 626.-54, Code, 1966). The property levied upon consisted of: "36 Hol. milk cows, 4 Hol. feeders, 1 steer, 25 hogs, 1 Hol. bull, 6 black Hol. calves, 500 bu. corn, 300 bu. oats."

January 15, 1968, the personalty described above, included in the security transactions, supra, was sold for $6800 at sheriff's sale to the elevator company.

The same day Eldon Rouse prevented delivery of the property by barricading his farm lane.

Simultaneously Bert Rouse, the father, commenced a mortgage foreclosure action, cause No. 18713, aided by an ex parte injunction, the sheriff and judgment creditor being thereby restrained from taking possession of the property sold as aforesaid.

The next morning counsel for the elevator appeared in open court with Bert's attorney, who had previously, and at that time, arguendo, represented Eldon and Daisy. On oral motion by the elevator company, in connection with cause No. 18713, trial court then dissolved the injunction referred to above, and appointed a receiver with instructions he promptly sell all personalty subject to the judgment lien.

That same day the receiver sold all grain to the elevator company, and January 17th caused the livestock seized to be disposed of at public auction. From these sales the receiver apparently realized a total of $9,158.-30.

Pursuant to court order, notice of hearing on the receiver's report was given all parties in interest, including Alvin Rouse. Objections were then filed by Bert, Alvin, Eldon and Daisy. Bert thereby challenged jurisdiction of the court to appoint a receiver and asserted his claimed priority rights under the security instrument held by him. Eldon and Daisy, judgment debtors, in objecting to the receiver's report, for the first time protested sale of property exempt to them and joined in disputing authority of the court to appoint a receiver. Alvin's objection discloses an election to stand only on his rights as a security holder, claiming he should be accorded preference over the elevator's judgment lien. The elevator company, by answer, controverted Bert and Alvin's right to any proceeds realized from the receiver's sales, and asked that all net funds on hand be delivered to it.

Trial court overruled the priority claims advanced by Bert and Alvin, and ordered disbursement of funds held by the receiver in this manner:

| | |
|---|---:|
| (a) Charles H. Barlow, receiver | |
|     Fees | $ 445.00 |
|     Expenses | 92.76 |
| (b) Sheriff R.O. Miller | |
|     222 miles at 10¢ a mile | 22.20 |
| (c) Beryl Rupp Insurance Agency, Emmetsburg, Iowa, premium for receiver's bond | 50.00 |
| (d) Greater Iowa Corporation (by stipulation; draft to be payable jointly to Greater Iowa Corporation and Carl L. Spies, its attorney, and mailed to counsel) | 479.00 |
| (e) Eldon Rouse, defendant (gross proceeds from sale of exempt property; draft to be payable jointly to Eldon Rouse, Daisy Rouse and Linnan, Lynch & Straub, their attorneys, and mailed to counsel) | 1,522.90 |
| (f) The costs of this action, to be computed by the clerk, in the sum of $73.50, are taxed one-third to the receivership property and to be paid therefrom (one-third of costs) | 24.50 |
| (g) The remaining balance on hand after payment of the above amounts is to be paid to the Farmers Cooperative Elevator Company of Ruthven, Iowa, with draft payable jointly to Farmers Cooperative Elevator Company of Ruthven, Iowa, and Fitzgibbons Bros., their attorneys, and mailed to counsel. | $6,521.94 |

———◆———

It is at once evident this case turns largely upon a complicated factual situation.

There is some overlapping of the multiple propositions urged by appellants and in the interest of brevity they are not now specified but will be later accordingly considered.

■ I. Our review is de novo. When considering credibility of witnesses we accord weight to trial court's fact findings but are not bound by them. Rule 344(a) (3) and (f) (7), Rules of Civil Procedure.

■ II. It should at the outset be noted, by way of exclusion, this court is not here concerned with any action in tort for abuse of process, or with proceedings for recovery upon the indemnifying bond filed in cause No. 18533 by the judgment creditor. No such issues were pled, presented to, entertained or considered by the trial court, and cannot be raised here for the first time. See Volkswagen Iowa City, Inc. v. Scott's Inc., Iowa, 165 N.W.2d 789, 794, and Verschoor v. Miller, 259 Iowa 170, 176, 143 N.W.2d 385.

III. Foremost among the problems posed is trial court's jurisdiction to appoint a receiver.

It appears Bert Rouse alone, in objecting to the receiver's report, questioned mechanics of the application upon which a receiver was assigned, i. e., by motion rather than

petition. See Code section 680.1. But at time the request was made, his attorney, being present in court, made no such specific objection. In other words, he delayed voicing actual complaint in this regard until a receiver had not only been named but fully performed his duties, except for effecting final distribution.

As revealed infra, trial court had requisite jurisdiction to act. And by reason of the extraordinary factual situation involved it was confronted with an emergency. The conditions existing left little or no choice for the court but to act in protection of the interests of all concerned.

Another factor which, though not alone determinative, still materially reduces the force and effect of Bert's complaint, is that in his mortgage foreclosure action he too requested appointment of a receiver. And, whether such custodial officer be appointed on application by him, or the elevator, the net result would be the same with respect to priority rights as between claimants.

■ Furthermore, all parties concerned apparently concede a judgment creditor has standing to seek such protective relief regarding personalty subject to its lien. See 75 C.J.S. Receivers § 11, page 670, and 45 Am.Jur., Receivers, section 13, page 22.

■ Also, as this court said in Chicago, R. I. & P. R. Co. v. Linwood, etc., Co., 258 Iowa 1378, 1381, 138 N.W.2d 902, 903: "The designation given a pleading is not of vital importance. Its character is to be determined largely by its allegations and legal effect, not solely from the name given it."

■ Without placing the stamp of approval on use of a motion in lieu of petition for appointment of a receiver, we believe trial court had inherent authority to act; its action was not void, being at best only voidable; the objection urged by Bert was not timely made; and trial court, here clearly had not only the right but permissive duty to act. See in this vein 75

C.J.S. Receivers §§ 34–36, pages 696–698, and 88–90, pages 732–736.

IV. Actually the complaint first voiced here by judgment debtors and claimed security holders alike is to the effect they neither received notice of the elevator company's application for appointment of a receiver, nor were accorded opportunity to be heard on it.

As heretofore disclosed, judgment had been entered in cause No. 18533, execution issued, levy made, and a sheriff's sale effected prior to presentation of the receivership motion by the elevator company in Bert's foreclosure action.

Moreover, trial court was advised, and found in effect, an emergency condition then existed in that livestock involved was jeopardized and depreciating in value; no judge would be available to entertain the application for at least one week; the elevator company was entitled to immediate possession of the property levied upon for protection of its exercised judgment lien; and appointment of a receiver would not materially prejudice the rights of any party.

Code section 680.1, as amended, provides in part: " * * * *on such notice to the adverse party as the court or judge shall prescribe,* the court, * * * if satisfied that the interests of one or both parties will be thereby promoted, and the substantial rights of neither unduly infringed, may appoint a receiver to take charge of and control such property under its direction during the pendency of the action, and may order and coerce the delivery of it to him." (Emphasis supplied).

■ We have held, this statute means parties in interest should ordinarily be given reasonable notice and opportunity to be heard prior to appointment of a receiver. But failure to do so does not defeat the inherent discretionary authority of a court to act, absent notice, when reasonably satisfied such is necessary to prevent damage to or loss of property. On this subject see

State ex rel. Weede v. Iowa Southern Utilities Co. of Delaware, 231 Iowa 784, 839, 2 N.W.2d 372,.4 N.W.2d 869; Citizens State Bank of Postville v. Beucher, 229 Iowa 471, 476, 294 N.W. 717, 296 N.W. 362; Herman C. Miller Co. v. Silvers Manufacturing Co., 227 Iowa 1000, 1004, 289 N.W. 699; Crouse v. Crouse, 210 Iowa 508, 511–512, 229 N.W. 850; McCarthy Co. v. Dubuque District Court, 201 Iowa 912, 914–915, 208 N.W. 505; Parry v. West, Iowa, 197 N.W. 297; Crim v. Crim, 194 Iowa 1137, 1138, 191 N.W. 157; Hirsch, Elson & Co. v. Israel, 106 Iowa 498, 502, 76 N.W. 811; McKee v. Murphy, 138 Iowa 322, 324–325, 113 N.W. 499; and Maish v. Bird, 59. Iowa 307, 310–311, 13 N.W. 298. See.also 75 C.J.S. Receivers §§ 48–49, pages 704–710.

■ Under existing highly unusual circumstances we find no compelling cause to hold trial court had no authority to act or abused its discretion in appointing a receiver and ordering sale by him of the personalty previously levied upon. With regard to such disposition see Boston Investment Co. v. Pacific Short Line Bridge Co., 104 Iowa 311, 317–319, 73 N.W. 839, and 75 C.J.S. Receivers § 221, page 856.

V. Alvin Rouse personally participated in the receiver's report hearing and in so doing stipulated two questions be specifically determined by the court. He now contends those issues were not resolved. It would appear, however, at least inferentially, the questions so posed were resolved.

■ In any event, as indicated, supra, it is our duty to review the whole record and adjudicate rights anew on those propositions properly presented, provided the issue has been raised and error, if any, preserved in the course of trial court proceedings. See Quint-Cities Petroleum Co. v. Maas, 259 Iowa 122, 126, 143 N.W.2d 345, and Boss Hotels Co. v. City of Des Moines, 258 Iowa 1372, 1377, 141 N.W.2d 541, cert. den. 385 U.S. 852, 87 S.Ct. 95, 17 L.Ed.2d 80.

VI. As previously disclosed Bert and Alvin Rouse vigorously dispute trial court's holding to the effect any security agreements obtained by them, after entry of judgment against Eldon and Daisy, but prior to levy thereon, were fraud tainted and inferior to the judgment creditor's rights.

Initially these challenging appellants contend the burden was upon the elevator company to first plead then prove fraudulent design by clear and satisfactory evidence, and it failed in both respects. In support of that contention they cite McKee v. McKee, 239 Iowa 1093, 1098, 32 N.W.2d 379; Price v. Scharpff, 220 Iowa 125, 128, 261 N.W. 511; Blume v. Crawford County, 217 Iowa 545, 553, 250 N.W. 733, 92 A.L.R. 757; and Wheeler & Wilson Manuf'g Co. v. Haszrouck, 68 Iowa 554, 555, 27 N.W. 738. See also 37 C.J.S. Fraudulent Conveyances §§ 380–382, pages 1208–1212, and 37 Am. Jur,2d, Fraudulent Conveyances, sections 213–214, pages 869–870.

Inferentially conceding there is substance in the foregoing principle, the elevator company argues that in course of the receiver's report hearing evidence was introduced, without objection, relative to fraud, bad faith and insolvency, thereby placing these issues before the court as though pled, the proof thereof being more than adequate.

■ Considering at this time the matter of pleading, we said in Morris Plan Leasing Co. v. Bingham Feed and Grain Co., 259 Iowa 404, 424, 143 N.W.2d 404, 417: " 'Where parties proceed without objection to try an issue, even though not presented by the pleadings, it amounts to consent to try such issue and it is then rightfully in the case.' " See also Holland v. Holland, Iowa, 161 N.W.2d 744, 746; In re Estate of Millers, Iowa, 159 N.W.2d 441, 446; and Wilson v. Corbin, 241 Iowa 593, 605, 41 N.W.2d 702.

With regard to fraud, bad faith, and insolvency attendant upon giving of the dis-

puted security agreements to Bert and Alvin all evidence was presented absent challenge, with one possible exception.

■ We turn now to the lone objection interposed. At one stage of the proceedings the judgment creditor offered in evidence a debtor examination transcript relative to Eldon's financial condition which included testimony by both Bert and Alvin. Bert's attorney then stated: "Plaintiff objects to it as incompetent, irrelevant and immaterial; without sufficient foundation; not binding on plaintiff." This objection was overruled.

It is apparent the foregoing objection was totally inadequate, thus ineffective, and affords the objector no cause for complaint. Deaver v. Armstrong Rubber Co., Iowa, 170 N.W.2d 455, 465; State v. Entsminger, Iowa, 160 N.W.2d 480, 482–483; Hahn v. Graham, 256 Iowa 713, 716–717, 128 N.W.2d 886; and Jettre v. Healy, 245 Iowa 294, 299, 60 N.W.2d 541.

There is no sound basis upon which to now hold trial court erred in overruling the foregoing objection. This means the debtor's examination transcript was properly admitted in evidence.

VII. Next to be considered is the matter of fraud and bad faith attendant upon preferential treatment accorded one creditor over another.

Issues involved in this area are not new, but application of those rules of law found in° prior judicial pronouncements is at best difficult since each case of this character must be decided upon facts peculiar to it alone.

Stated otherwise, we deal here not with absolutes but rather with badges or indices of fraud. Harvey v. Phillips, 193 Iowa 231, 234, 186 N.W. 910.

■ Included in this category are inadequacy of consideration, insolvency of the transferor, and pendency or threat of third party creditor litigation.

■ And though blood relationship is not per se a badge of fraud, it may strengthen the inference arising from the circumstances, requiring strict proof of consideration and fairness of the transaction. Commercial Savings Bank of Lohrville v. McLaughlin, 203 Iowa 1368, 1369, 214 N.W. 542. See also 37 Am. Jur.2d, Fraudulent Conveyances, section 25, page 715.

In Hatheway v. Hanson, 230 Iowa 386, 297 N.W. 824, this court dealt with some of these elements and there observed, loc. cit., 230 Iowa 393, 394, 297 N.W. 827. "In the case of First Nat. Bk. of Iowa City v. Hartsock, 202 Iowa 603, 604, 210 N.W. 919, 920, we state:

" 'Fraud is not presumed. The relationship of parents and child between the grantors and the grantee does not create a presumption of fraud. It does require a critical examination of the attending circumstances. Fraud is not committed openly. It is an offense of secrecy. Direct evidence is rarely obtainable. Frequently, it can be shown only by the circumstances admitted by the parties to it. Fraud may, and usually must be, proved by circumstantial evidence. The individual circumstances are usually inconclusive and attacked separately may be blown away. The circumstances must ordinarily be considered together, and the force and weight to be given them are that of them in combination.

" 'The circumstances of a bona-fide transaction are ordinarily consistent with each other and with generally recognized business methods and fair dealing, and not incredible. A fraudulent transaction naturally begets stilted, contradictory, and incredible evidence. The bona-fide transaction and the fraudulent one each has its well-recognized indicia.'

"In the case of Central City Sav. Bank v. Snyder, (Iowa), 176 N.W. 695, 697, we state:

" 'The transfer of substantially all of the property of the judgment debtor when

embarrassed financially; the transfer by the debtors in anticipation of a suit; failure to put conveyances on record under certain circumstances; the unexplained retention by grantors, of the possession of property transferred—are badges of fraud. Transactions between relatives are, under the authorities, subject to scrutiny, and knowledge of grantors' fraudulent intent may be implied from the relationship of the parties. These, and other points argued, are familiar doctrine.'

"In Richards v. Schreiber, Conchar & Westphal Co., 98 Iowa 422, 428, 67 N.W. 569, 570, 571, we state:

"'A creditor may take security for the debt due him, even though he is aware that the purpose of the debtor in giving it is to hinder, delay, and defeat, and thus to defraud, other creditors. (Authorities cited). But if the creditor know of the fraudulent purpose of the debtor, and accept the mortgage wholly or in part to aid in accomplishing it, he participates in the wrong, and the mortgage is fraudulent against creditors, although it was only on a reasonable amount of property to secure a valid debt. (Authorities cited).'" (Emphasis supplied). See also Friedmeyer v. Lynch, 226 Iowa 251, 261–262, 284 N.W. 160; 37 C.J.S. Fraudulent Conveyances §§ 79–82, pages 922–925; and 37 Am.Jur. 2d, Fraudulent Conveyances, sections 6–26, pages 696–719.

The italicized portion of the foregoing quote is thus stated in Central Shoe Co. v. Rashid, 203 Iowa 1103, 1106, 212 N.W. 559, 561: "The right of a creditor, acting in good faith, to secure payment of his claim, although he knows the debtor is insolvent and that the result will be to postpone or defeat other creditors in the collection of their claims, is well settled. And even knowledge that the debtor is actuated by a fraudulent purpose will not defeat his right, if he acts in good faith for his own protection and with no participation in the fraudulent purpose of the debtor. (Authorities cited)."

On the same subject see also Commercial Savings Bank of Lohrville v. McLaughlin, 203 Iowa 1368, 1369, 214 N.W. 542; 37 C.J.S. Fraudulent Conveyances § 235, page 1058; and 37 Am.Jur.2d, Fraudulent Conveyances, section 87, page 770.

Monona County v. Schoenherr, 251 Iowa 1301, 105 N.W.2d 91, involved a county creditor challenged deed from father to son and this court held, fraud such as there involved is never presumed, the burden being upon a contestant to establish it by clear and satisfactory proof. We also said at pages 1305–1306, 251 Iowa at page 94, 105 N.W.2d: "Finally it is urged that the trial court erred in finding there was no mutual fraud shown. We assume under the record that grantors were insolvent, at least after the execution of the deed. It must be conceded that Paul Schoenherr, by taking the deed, received preference over other creditors of his father. It may also be assumed, but we do not so find, that the grantors made the deed with intent to hinder, delay and defraud other creditors including the plaintiff. While the above matters are factors to be considered upon the question of fraud they are not alone determinative, such as to require a cancellation of the deed. (Authorities cited). Appellant still has the burden of showing grantee's intentional participation therein. Not only has it failed to do such by clear and satisfactory evidence, but the testimony of the defendant if believed, clearly dispels any suspicions that Appellant's evidence may have aroused. The idea of the transfer came from the grantor, not the grantee; grantee cancelled an indebtedness of more than $12,000 and assumed a new debt of $4,000; it was done only after a few days thought upon the proposition. We think the record shows good faith upon the part of the grantee to protect himself and that Appellant has failed to carry its required burden of proof." (Emphasis supplied).

And as indicated in Hatheway v. Hanson, supra, a debtor may act in fraud

of some creditors by sale, *mortgage or the giving of security to others.* See also 37 C.J.S. Fraudulent Conveyances §§ 34–35, pages 886–889, and 37 Am.Jur.2d, Fraudulent Conveyances, section 58, page 743.

█ Referring now to the financial status of a debtor we said in State v.. Cadwell, 79 Iowa 432, 447, 44 N.W. 700, 705: " 'Solvency is ability to pay all debts or just claims. Insolvency is inability to pay such debts. * * *.' " See too Code section 554.1201(23), and Black's Law Dictionary, Revised Fourth Ed., "insolvency", page 937.

█ It is also understood a valid pre-existing debt is ordinarily deemed sufficient consideration for any conveyance or giving of security by debtors to creditors, provided the amount of that antecedent debt is not materially less than a fair and reasonable value of the property conveyed or encumbered. Steffy v. Schultz, 215 Iowa 837, 246 N.W. 910; 37 C.J.S. Fraudulent Conveyances § 155, page 974; and 37 Am.Jur.2d, Fraudulent Conveyances, sections 18–24, pages 707–715. See also Code section 554.3303(b).

The task before us is to effect an equitable interpretation of the factual situation involved, in light of the foregoing pertinent standards.

As a preface, however, to any further consideration of this matter there is no apparent escape from the conclusion that Eldon and Daisy Rouse were insolvent, at least after effecting the disputed arrangements with Bert and Alvin.

VIII. Although we find the two security claimants stand on a decisively different footing, there are still some recognized factors common to both which must be first considered.

The basic facts regarding preferential treatment accorded Bert and Alvin, and their close relationship to Eldon, have been heretofore explored at some length and need not be repeated.

Additionally, at the time here concerned, both Bert and Alvin were unquestionably aware of the distressed financial situation confronting Eldon and Daisy, and existence of the elevator's judgment against them.

█ Trial court also found *Eldon's purpose* in giving the security instruments was to fraudulently hinder, delay, and if possible defeat the elevator company's claim. An examination of the record prompts us to agree with that finding.

For reasons previously stated, however, the foregoing conditions, though material, are not alone sufficient to establish fraud by such clear and convincing evidence as to defeat the priority status asserted by Bert and Alvin.

The determinative question is whether these two security holders, or either of them, participated in Eldon's fraudulent design, and here the matter of consideration becomes an important factor.

IX. Alvin's position will be first considered.

Conceding the elevator company produced evidence divulging existence of those badges of fraud set forth above, it still remains Alvin established, by satisfactory proof, both valuable and adequate consideration. Moreover the elevator company failed to affirmatively prove fraudulent intent on Alvin's part. See in that respect Hatheway v. Hanson, and Monona County v. Schoenherr, both supra; 37 C.J.S. Fraudulent Conveyances § 383, page 1212; and 37 Am.Jur.2d Fraudulent Conveyances, section 217, page 873.

As already revealed a good faith antecedent debt may constitute valuable consideration.

█ In this direction the record shows that when the subject security instruments were given there was outstanding a promissory note in the face sum of $2,508.35, dated December 1, 1964, executed by Eldon Rouse and Daisy Rouse, payable to

Alvin C. Rouse and Vesta D. Rouse, on which some payments had been made, and at least $2250 was owing.

Furthermore Alvin, being at all times engaged in both the gasoline and construction business, produced two business statements of account owing to him by Eldon. These were admitted in evidence. One was for construction work in 1964, balance due $514.64, the other for gas and oil supplied in 1966–1967 on which $438.24 was owing.

We conclude Alvin established existence of good faith antecedent debts, and that the value of security given him was not so disproportionate to the total obligation due as to defeat the valuable consideration showing made. In any event, no convincing evidence was adduced which served to effectively disclose otherwise.

Monona County v. Schoenherr, supra, lends more than minimal support to this conclusion. There a deed given by debtor to his son recited a consideration of $17,-900, but the evidence disclosed a total antecedent debt of about $16,700. On appeal we found the conveyance had been effected in good faith for valid and sufficient consideration. See also Steffy v. Schultz, supra.

An examination of the record dictates a finding that Alvin did not knowingly participate in any possible fraudulent purpose or design on Eldon's part with regard to acceptance by the former of the questioned note and security agreement.

Admittedly Eldon, on one occasion, testified he gave the security papers in order to shield himself from the elevator's judgment. At another time this witness stated he so acted for the protection of his father and brother. On the other hand there is adequate counterbalancing evidence to the effect Alvin was given and accepted the note and security to the end that his interests be protected.

It thus appears the elevator company failed to satisfactorily establish such fraudulent intent or participation on Alvin's part as to vitiate the note and security instrument received by him.

We therefore hold priority over the elevator company's judgment lien should have been accorded the note and security given to Alvin by Eldon and Daisy Rouse. Trial court erred in holding to the contrary.

X. Next to be considered is the claim made by Eldon's father, Bert Rouse.

This claimant did not testify in course of the receivership hearing, the only showing made by him being found in the debtor examination transcript considered above.

That document reveals he testified in material part as follows: "My name is Bert Rouse. I can't hear very good, didn't hardly hear anything Eldon said. I am 74 years of age and I am the father of Eldon Rouse and the owner of the farm upon which Eldon lives. The farm is mortgaged. I got a mortgage from Eldon. I didn't loan him any money on the day I got the mortgage. The mortgage covered what he owed me in the past; grain, feed, buildings and material. The buildings and material are up to him. I cosigned the note with him at the Palo Alto Bank."

The only other evidence regarding existence of a debt owing by Eldon to his father is that given by the former during hearing on the receiver's report. Because of its materiality, uncertainty, inadequacy and self-serving nature, there is no choice but to quote the record: "I owe my father between fifteen and sixteen thousand. My father is my landlord. The debt is for corn and repairs. I do not know what the debt would be on the corn but it would be in the thousands of dollars. I do not know how many thousands. It would be more than one thousand. Some of the records kept on this are at home. Dad keeps a pretty good record of the corn weights. I have no records with me on the corn. I would estimate it is six or seven thousand. It would be for his half of the corn crop of 1967, then there would be some from years back. The debt for corn would run six to seven thousand dol-

lars. The other debt would run from rent and plowing and labor. The plowing amounted to about $400.00. Dad helped me run the corn sheller and plowed for me. I hadn't paid him for that. Repaired buildings are in the debt also. Dad owns the farm but I pay for repair of the buildings. This isn't in the written lease, it was an oral agreement between Dad and I when I moved on the farm, that I was to stand the repairs or any additions to the farm. I have a written lease at home and I will bring it along tomorrow. I repaired the hog house, the chicken house, new milk house. Material for the hog house ran around $465.00. I put a furnace in the house. It ran a little over $900.00. I paid for part of the furnace. My father had to finish up those payments also. I paid about $175.00. I owe about $700.00 to my father on the furnace but I really don't know the exact amount. It could be more or less. We put in the milk house in '65. It's a 16 by 16 milk house with a permanent cement floor. I owed my father for part of that. It run about $1,080.00. The lumber came from Cashway Lumber in Spencer. The payment at Cashway was put on the F.H.A. title one loan. There is about $400 left to pay on the milk house. My dad signed the loan. I also built a cattle shed in 1966, 36 x 23, with a permanent concrete floor. I bought the materials from Anderson Lumber Company in Emmetsburg. I owe my father around $2700 on the cattle shed. It cost $3000. I am not charging my father for labor in these. The large items of improvements were financed by me with father signing with me. I farmed since 1963. After the crops were harvested in '63 we made a settlement; it seems like the rent and everything was settled at that time. I owed about 23 to 24 hundred at that time. At the end of each farming year I don't know as I made a settlement with my father. I tried to do what ever I could. I paid him a little money. Dad's share of the crops were put in the crib, and I usually purchased it from him. It started out in the first year in March, 1963. I didn't pay him money for it. I paid on the bills but it hasn't been specific which one that it's been put on. My payments have just been applied to the money owed. I purchased some of his crop every year. I kept some records of what I bought from him, but not all of it. I went to Attorney Smith's office on June 10th regarding the Farmers' Cooperative Elevator judgment and the debts I owe. We talked about the notes and getting them up. The main reason I went to Mr. Smith's office was because of the Elevator's judgment. I put in the amounts owed my brother and my father and we signed the notes and security agreements. We had a list at home of about what it would take to cover them. This was done to protect me from the judgment. No money was given to me at that time."

Not one shred of documentary evidence was produced in support of this testimony by Eldon, and no corroboration or more specific showing was at any time made.

Upon the basis of those guiding principles heretofore set forth, which need not be reiterated, we are constrained to hold that when Bert Rouse accepted the questioned note and security agreement he, inferentially at least, knew that as to him Eldon was acting with a fraudulent intent or purpose. In fact there is no alternative but to hold that Bert actually aided Eldon in the accomplishment of his fraud tainted objective. By so doing he must be held to have participated in the wrong.

Briefly stated, the bona fides of this father and son transaction were not established. In addition to authorities heretofore cited see Glenn v. Glenn, 17 Iowa 498, 502–503, and 37 C.J.S. Fraudulent Conveyances § 91, page 928.

Understandable as the father's conduct may be in a situation such as that here presented, our duty is to act on the record before us in accord with established legal principles.

Unavoidably we now hold, trial court was correct in overruling objections by Bert Rouse to the receiver's report, and

denying him right of priority over the elevator company's judgment lien.

XI. Other propositions urged by appellants in support of a reversal have been duly considered and found to either inhere in our findings and conclusions, supra, or to be so devoid of substance that discussion will only serve to needlessly extend this opinion.

XII. Trial court's decree is affirmed in part, being reversed only as to the adjudication adverse to Alvin Rouse. This also means the court erroneously taxed part of the trial costs to him.

The case must accordingly be remanded for entry of a decree consistent with this opinion.

Costs on this appeal are taxed one-third to Bert Rouse, one-third to Eldon and Daisy Rouse, and one-third to Farmers Cooperative Elevator Company of Ruthven, Iowa.

Affirmed in part, reversed in part, and remanded with instructions.

All Justices concur, except LARSON and LeGRAND, JJ., who concur in the result.