**SECURITY STATE BANK and Central State Bank, Appellees,**

v.

**Frank J. TAYLOR and Mary E. Taylor, Appellants.**

**No. 86–454.**

Supreme Court of Iowa.

April 13, 1988.

---

1. There is no dispute that the action to enforce   is timely in Iowa.

Frank J. Taylor, pro se.

James P. Craig and Eric W. Lam of Moyer & Bergman, Cedar Rapids, for appellees.

Considered by McGIVERIN, C.J., and HARRIS, CARTER, LAVORATO, and ANDREASEN, JJ.

HARRIS, Justice.

Defendants raise a number of due process claims in this farm mortgage foreclosure suit. The trial court rejected them and ordered foreclosure. We affirm.

Defendants Frank and Mary Taylor borrowed $293,000 from plaintiff Security State Bank. They gave the bank a promissory note for that amount, secured by a mortgage on their farmland and a security interest in livestock and other personal property. The bank later assigned a portion of the loan and security to the other plaintiff, Central State Bank. The Taylors thereafter defaulted on their note, precipitating this action to foreclose the mortgage and security interest. During most of the extensive trial court proceedings the Taylors have appeared pro se.

I. The Taylors contend they were denied due process because there was no hearing prior to when a receiver was appointed to take control of their property. They think that, without a hearing, the court lacks sufficient evidence to decide whether a receiver is necessary. Our statutory scheme provides for the appointment of receivers "if ... the interests of one or both parties will be thereby promoted, and the substantial rights of neither unduly infringed...." Iowa Code § 680.1.[1]

Section 680.2 [2] indicates that a hearing will normally precede the appointment of a receiver but our case law provides for an exception. In *Wolf v. Murrane*, 199 N.W. 2d 90 (Iowa 1972), we said that "[g]enerally a court may not appoint a receiver without notice and a reasonable opportunity for interested parties to be heard prior to the appointment...." *Id.* at 99. We then stated that, "[i]n emergencies where a showing is made that ex parte appointment of a receiver is necessary to prevent damage to or loss of property, the court may

---

1. All references are to the 1985 Code.

2. Section 680.2 provides: "Upon the hearing of the application, affidavits, and such other proof as the court or judge permits, may be introduced, and upon the whole case such order made as will be for the best interest of all parties concerned."

exercise its discretion in appointing without notice." *Id.*

Because no exigent circumstances appeared in *Wolf v. Murrane* we found error in the ex parte appointment but nevertheless refused to reverse because neither party was prejudiced. We found the result was fair and were unwilling to reverse solely because of the absence of a hearing. *Id.; see also In re Marriage of Prybil,* 230 N.W.2d 487 (Iowa 1975).

In *Rouse v. Rouse,* 174 N.W.2d 660 (Iowa 1970), we said that section 680.1 "means parties in interest should ordinarily be given reasonable notice and opportunity to be heard prior to appointment of a receiver." *Id.* at 665. But a court has discretion to act without notice when reasonably satisfied it is necessary to prevent damage to or loss of property. *Id.*

Defendants' challenge is derived from the holding in *Fuentes v. Shevin,* 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972). We applied the *Fuentes* holding in *Thorp Credit, Inc. v. Barr,* 200 N.W.2d 535, 536–37 (Iowa 1972), and struck down our prior replevin law. Under *Fuentes* statutory plans for prejudgment seizure of property violate due process and are unconstitutional unless they provide for notice to the debtor and an opportunity to be heard. 407 U.S. at 80, 92 S.Ct. at 1993–94, 32 L.Ed.2d at 569. There is no constitutional violation, however, if the judicial inquiry is merely postponed until after the service. *Mitchell v. W.T. Grant Co.,* 416 U.S. 600, 611–17, 94 S.Ct. 1895, 1902–1905, 40 L.Ed. 2d 406, 415–19 (1974). *See generally* Annotation, *Modern Views as to Validity under Federal Constitution, of State Prejudgment Attachment, Garnishment, and Replevin Procedures, Distraint Procedures under Landlords' and Innkeepers' Lien Statutes, and Like Procedures Authorizing Summary Seizure of Property,* 18 A.L.R.Fed. 223 (1974).

■ There was no due process violation in the appointment of a receiver in this case. In the first place the situation falls outside the extrajudicial seizures proscribed in *Fuentes.* The *Fuentes* holding pertains "to prejudgment seizures of prop-erty without notice or hearing, based solely on complaint or affidavit, with no judicial intervention." *Northwest S.D. Prod. Credit Ass'n v. Dale,* 361 N.W.2d 275, 278 (S.D.1985). The appointment here was not extrajudicial; it was made by a court in a pending case, with jurisdiction clearly established over the debtors and the subject matter. The debtors were served with original notice and appeared in the action.

Moreover the record supports the trial court's belief that an immediate appointment was necessary to prevent the Taylors from selling any more of the secured property. A supporting affidavit listed specific dates for three sales which occurred after the foreclosure action was begun. Proceeds from the sales were not tendered to the banks. With the security being thus dissipated an emergency existed.

The trial court did not err in rejecting the due process challenge to the ex parte appointment of a receiver.

■ II. The Taylors claim they were denied a constitutional right to a jury trial. They demanded a jury trial on legal issues they raised in a counterclaim they filed with their answer. Iowa rule of civil procedure 177(a) states that a "[j]ury trial is waived if not demanded according to this rule; but a demand once filed may not be withdrawn without the consent of all parties not in default". Iowa rule of civil procedure 178 states in part:

> Issues for which a jury is demanded shall be tried to a jury unless the court finds that there is no right thereto or all parties *appearing at trial* waive a jury in writing or orally in open court.

(Emphasis added.) Those who choose not to appear at trial thus waive their right to participate in the decision whether to waive the jury; the waiver can be effected by all the parties who are present for trial.

The Taylors were not present and cannot now complain that those who were present unanimously elected to waive a jury.

■ III. The Taylors claim a separate due process violation in connection with the use of a county law library. Because the Taylors are not attorneys the law library

was not as freely accessible to them as it would have been to a practicing attorney. When they complained the court entered an order which thereafter gave them access when it would not conflict with scheduled hearings or depositions. They now urge that any limitation of access to a county law library to members of the general public violates article I, section 6 of the Iowa constitution.[3]

Most law library cases involve incarcerated pro se litigants who claim a right of access to a prison library. In those cases it is uniformly held that temporary restrictions on access are constitutional. *See Cookish v. Cunningham*, 787 F.2d 1 (1st Cir.1986) (access denied during two-week quarantine); *Oliver v. Marks*, 587 F.Supp. 884 (E.D.Pa.1984) (access denied on one occasion due to dispute over when library closed); *Tawney v. McCoy*, 462 F.Supp. 752 (N.D.W.Va.1978) (five-day denial of access). The justification for allowing reasonable restrictions in the prison situation is that a need exists to maintain security and order. *Cookish*, 787 F.2d at 5–6.

County law libraries exist in most Iowa courthouses. They vary widely in size, quality, condition and accessibility. They also vary considerably in how they are funded. Public funds are used at least in part to equip and maintain most, perhaps all of them. They are also widely funded through efforts and contributions of the practicing bar.

Although public funds are involved in the libraries they are not readily accessible to the public. They are maintained as a necessary tool for the work of the court and court officers. The legislature has recognized this primary function by placing them under the supervision and control of district court judges. Iowa Code § 331.382(7). They are not primarily intended for use by the general public.

This is not to suggest that non lawyer citizens should be excluded from county law libraries. An effort should be made, as it was here, to provide access to all persons. But public access must yield to court business. In regulating the libraries, either in individual cases or by a supervisory order, the judges must work within a severely limited budget, which in most cases cannot accommodate the hiring of a librarian to serve the general public. Private citizens who wish to use a county law library must therefore arrange their affairs to conform with the availability of court facilities and personnel.

The access ordered here was vastly more than adequate to satisfy any due process claims of the Taylors.

IV. Other assignments of error will not be detailed because to discuss them would unduly extend this opinion. The Taylors waived any right to object to the form of tender proffered by the bank by not protesting the form at the time of tender. *See* Iowa Code § 538.8. There is no merit to other due process claims relating to notice and hearings. *See SMB Inv. v. Iowa–Illinois Gas & Elec. Co.*, 329 N.W.2d 635, 639–40 (Iowa 1983) ("Due process requires notice reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.").

AFFIRMED.

---

**3.** Article I, § 6 provides: "All laws of a general nature shall have a uniform operation; the general assembly shall not grant to any citizen, or class of citizens, privileges or immunities, which, upon the same terms shall not equally belong to all citizens."