FRANK E. FISHER

*v.*

WILLIAM WHYTE, *Supt.,*

HUTTONSVILLE CORRECTIONAL CENTER

(No. 14079)

Decided February 14, 1978.

*Jay Montgomery Brown* for relator.

*Chauncey H. Browning,* Attorney General, *Pamela Dawn Tarr,* Assistant Attorney General, for respondent.

NEELY, JUSTICE:

In this original habeas corpus proceeding the petitioner, Frank E. Fisher, challenges on due process and equal

protection grounds both the disciplinary procedures at the Huttonsville Correctional Center and the State's failure to provide him the records needed to perfect an appeal from his conviction in the Circuit Court of Taylor County of the crime of breaking and entering. We find petitioner asserts no grounds for relief.

On June 24, 1977, the petitioner was transferred from the Huttonsville . Correctional Center to the Grafton Work/Study Release Center, where he obtained regular employment at the Bridgeport Airport. On July 29, 1977 William Duncil, supervisor of the Grafton Center, charged the petitioner with a violation of institutional rules forbidding the use of alcohol or drugs by prisoners. The rule infraction was alleged to have occurred between the hours of 6:30 p.m. July 27 and 9:30 a.m. July 28, 1977, while the petitioner was away from the Grafton Center on a pass. The petitioner was given a write-up of the charges against him and transferred back to the Huttonsville Correctional Center to await a disciplinary hearing. On August 18, 1977 a disciplinary hearing was held at Huttonsville before a committee convened in accordance with the *Rules and Regulations Governing Inmates of the Huttonsville Correctional Center*. The committee found the petitioner guilty, gave him credit for time served in the Taylor County jail awaiting transportation to Huttonsville, returned him to the inmate population at Huttonsville, and imposed no further penalties.

While it is not disputed that the disciplinary committee hearing petitioner's case was properly constituted according to Huttonsville's rules and regulations, petitioner argues that the committee should have been constituted in accordance with *W.Va. Code*, 28-5-28 [1977].[1]

---

[1] The complete text of *Code*, 28-5-28 [1977] is:

In order to encourage prison discipline, a distinction may be made in the treatment of prisoners so as to extend to all such as are orderly, industrious and obedient, comforts and privileges according to their merit. The reward to be bestowed on prisoners for good conduct shall consist of such relaxation of strict prison rules and extension of social privileges as may be consistent with proper discipline. Commutation of time for good conduct, industry and obedience shall be granted by the warden and twenty days per

That statute makes provision for "a disciplinary commit-
tee composed of the warden, prison physician and the

month deduction shall be made from the term or terms of sen-
tences of all prisoners in Class I, and ten days per month deduction
shall be made from the term or terms of sentences of all prisoners
in Class II as hereinafter provided, when no charge of misconduct
has been sustained against a prisoner. A prisoner under two or
more cumulative sentences shall be allowed commutation as if they
were all one sentence. For each sustained charge of misconduct in
violation of any rule known to the prisoner, including escape or
attempt to escape, any or all of the commutation which shall have
accrued in favor of the prisoner to the date of said misconduct may
be forfeited and taken away by the warden upon the recommenda-
tion of the classification committee or the disciplinary committee
which are hereinafter established unless, in case of escape, the
prisoner voluntarily returns without expense to the State, such
forfeiture shall be set aside by the warden. No overtime allowance
or credits, in addition to the commutation of time herein provided
for good conduct, may be deducted from the term or terms of
sentences with the exception that for extra meritorious conduct on
the part of any prisoner, he may be recommended to the board of
parole and probation and to the governor for increased commuta-
tion or for a pardon or parole.

There is hereby established a classification committee composed
of the warden, the chaplain, the director of prison industries, the
prison physician and an associate warden.

The classification committee, as soon as practicable shall classify
all prisoners according to their industry, conduct and obedience in
three classifications: Class I, Class II, Class III, and reclassify any
of such prisoners from time to time as in their opinion the circum-
stances may require. The warden shall keep or cause to be kept a
conduct record in card or ledger form and a calendar card on each
inmate showing all classifications, changes of classifications and
forfeitures of commutation of time and reasons therefor. As soon as
practicable, the warden shall change the conduct records of prison-
ers now in the penitentiary to conform with said conduct record
and calendar card.

There is hereby established a disciplinary committee composed of
the warden, prison physician and the chaplain. Should any prisoner
be removed from any overtime job assignment because of miscon-
duct, an appeal shall lie to the disciplinary committee, and in the
event of an adverse decision by the disciplinary committee, the
prisoner so removed by reason of misconduct shall have the right
to appeal to the commissioner, whose decision shall be final.

When present overtime job assignments carrying more than
twenty days per month credit are vacated by the present incum-
bent for any reason, said job assignment shall not be renewed for a
credit of more than twenty days per calendar month.

chapain," none of whom, it is admitted, sat on the committee hearing the charges against the petitioner.

Petitioner's argument fails to place the disciplinary committee established by *Code*, 28-5-28 [1977] in its proper context. With respect to the committee, the statute does no more than allocate to it two specific functions. First, the committee is empowered to hear appeals from prisoners removed from overtime job assignments because of misconduct. Secondly, the disciplinary committee shares with the classification committee the responsibility for recommending to the warden what portion of prisoners' accrued commutation of time should be forfeited when charges of misconduct are sustained against prisoners. Neither of these specific functions is involved in this case.

The mere establishment by statute of a new disciplinary committee and the assignment to it of specific functions in no way requires that the new committee supplant other legitimately constituted committees performing other functions, as, for example, the committee charged in the case before us with determining the petitioner's guilt or innocence. Had the Legislature wanted the new disciplinary committee established in *Code*, 28-5-28 [1977] to perform a fact-finding, adjudicatory function it could have expressly made this provision, but it declined to do so. Our conclusion that the Legislature did not intend entirely to displace existing disciplinary committee arrangements is supported by the very structure of *Code*, 28-5-28 [1977] itself. The new committee acts in matters involving forfeiture of good time only when there is a "sustained charge of misconduct" against a prisoner. How the charge is to be sustained is not specified in the statute, but in any event the new disciplinary committee is not given that responsibility. The new committee's responsibility begins *after* the charge of misconduct has been sustained. Likewise, the new committee's appeal responsibilities in the area of overtime job assignments begin only after there has been some initial determination of misconduct. In short, the statute presupposes the existence of some fact-

finding, adjudicatory body other than the committee established by the statute itself. Accordingly, petitioner's argument that the new committee must be the one to determine his guilt or innocence in this case is without merit.

We have also considered petitioner's argument that he was denied the right to an effective appeal because of the State's failure to provide him, without expense, the records he needed to perfect an appeal. In his brief, the petitioner admits he did, in fact, receive all pertinent records from the Circuit Clerk with the exception of the warrant issued for his arrest. Inasmuch as the petitioner, with the advice of presumably competent counsel, pled guilty to the crime of breaking and entering, he waived his right on appeal to challenge any defects in the warrant. *Call v. McKenzie,* \_\_\_ W.Va. \_\_\_, 220 S.E.2d 665. Since the warrant would thus not be germane to any appeal of petitioner's guilty plea, the State's failure to provide him a copy is not sufficiently substantial to support a collateral attack on the conviction.

Accordingly, for the foregoing reasons, the writ of habeas corpus prayed for is denied.

*Writ denied.*