David E. TAWNEY, Plaintiff,

v.

W. Joseph McCOY, Commissioner, William B. Whyte, Warden, Robert Richards, Associate Warden, Joseph Sylvester, Chief Classification Counselor, Norris Weese, Lieutenant, Mr. Marstilleo, Lieutenant, Bill Carter, Sergeant, Defendants.

Civ. A. No. 78–186–E.

United States District Court,
N. D. West Virginia,
Elkins Division.

Dec. 13, 1978.

David E. Tawney, pro se.

Chauncey H. Browning, Jr., Atty. Gen. for W. Va., Charleston, W. Va., for defendants.

## OPINION

MAXWELL, Chief Judge.

Plaintiff in the above styled civil action seeks redress for certain alleged deprivations of his constitutional rights. He has set forth, in his complaint and in an amendment requested by this Court, certain allegations which he apparently believes entitle him to the relief he requests.

The complete statement of allegations made by Plaintiff may be found in the complaint and amendment. The brief statement contained here will serve to introduce the basis of the claims. Additional allegations important to specific claims made by Plaintiff are set forth later in the body of this opinion.

Plaintiff states that "[o]n September 3, 1978, a disturbance broke out on Dorm # 2 [of the Huttonsville Correctional Center, located in Huttonsville, West Virginia.] Several Dorms followed suit by breaking windows and shouting. On Monday, September 4, tear gas was throwed (sic) into # 11 Dorm Day Room." (This Court will take notice of the fact that this "disturbance" was a prison riot which involved the majority of the inmate population of the Huttonsville Correctional Center, required the as-

sistance of law enforcement personnel from numerous state agencies, and resulted in damages, at last estimate, of over $250,-000.00.)

During the course of this activity, Plaintiff suffered a head injury inflicted by one of the prison officers. Plaintiff was taken to the prison hospital but received no treatment other than the application of a bandage. After approximately four hours Plaintiff and other injured inmates, who had been held in a security room at the prison hospital, were transferred to the West Virginia State Penitentiary at Moundsville, West Virginia, a trip which took another four hours. Plaintiff's treatment at that institution was primarily fourteen stitches for his head wound.

On September 7, 1978, Plaintiff was given three notices of violation of institutional rules and placed in the Disciplinary Segregation Unit. On September 12, 1978, he was returned to the Huttonsville Correctional Center and placed in the maximum security area. On September 15, 1978, Plaintiff received another notice of violation of institutional rules.

A hearing was held on the charges on September 19, 1978, before the Disciplinary Committee at Huttonsville. The charges contained in the notices received while Plaintiff was at the West Virginia State Penitentiary were dismissed and the Committee only considered the charge received by Plaintiff on September 15, 1978, while at the Huttonsville Correctional Center. A finding of guilty was returned on September 21, 1978, whereupon Plaintiff was transferred to the West Virginia State Penitentiary and placed in Administrative Segregation where he was to serve a one year sentence.

Basing his complaint upon these allegations, Plaintiff makes eight different claims and seeks various amounts of money damages and injunctive relief in redress. Each of these claims is discussed separately below.

■ Plaintiff's first claim is that his segregation at the West Virginia State Penitentiary, from September 7 through September 12, was excessive in length and violative of his due process rights. However, it must be noted that Plaintiff was apparently a part of the main prison population from September 4, the date of this arrival, until September 7, the date when he was placed in the segregation unit. And it was on September 7 that he first received notice of the charges against him for his alleged participation in the "disturbance" at Huttonsville. Plaintiff could not have been afforded a hearing on these charges at the State Penitentiary. The evidence and witnesses were at Huttonsville and Plaintiff would have to be returned there to insure his opportunity to prepare and present a defense to the charges. Secondly, it is not at all unreasonable to expect the officials of the State Penitentiary to wish to remove Plaintiff from the main prison population when the possibility arose that he was one of the parties involved in a recent riot at another state institution. Reasonable prison security measures would require this action. And, finally, Plaintiff was held in the segregation unit for only five days, from September 7 until September 12 when he was returned to Huttonsville. In light of these facts, Plaintiff has not set forth a claim of constitutional proportions. See *LaBatt v. Twomey,* 513 F.2d 641 (7th Cir. 1975); *Roberts v. Pepersack,* 256 F.Supp. 415 (D.Md.1966), *aff'd* Mem.Op. 10,786 (4th Cir., June 16, 1967), *cert. denied,* 389 U.S. 877, 88 S.Ct. 175, 19 L.Ed.2d 165 (1967).

■ Plaintiff's second claim is that the transfer from the Huttonsville Correctional Center to the West Virginia State Penitentiary without first having received proper medical care constituted cruel and unusual punishment in violation of the Eighth Amendment to the Constitution. Plaintiff has included as a part of his complaint a newspaper clipping which contains purported statements of the doctor at the West Virginia State Penitentiary concerning the medical treatment Plaintiff should have received at Huttonsville. It is apparent, however, after consideration of the situation then existing at Huttonsville, that the action of the Huttonsville officials does not

hint at any deliberate indifference to the medical needs of the inmates. *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). Plaintiff himself notes that he did receive some medical attention, although this was administered by an inmate working in the Huttonsville prison hospital and not by a physician. It would appear that this claim deals more ·with a difference of opinion over the need for immediate medical treatment than over the withholding of all medical treatment.

■ Plaintiff's third claim is that the written notice provided him was inadequate to inform him of the charges, preventing his preparation of a defense. This Court required Plaintiff to more fully state his basis for this claim and he responded by stating that 1) the write-ups did not state the circumstances of the rule violations and 2) that Plaintiff was being held at Moundsville when he received the notice of the charges. Plaintiff also refers to Exhibit A of his original complaint which are copies of the charges made against Plaintiff.

It must be noted that Plaintiff states that· the Disciplinary Committee did not consider the charges Plaintiff received while he was being held at Moundsville. These charges were all dismissed by the Disciplinary Committee when it met at Huttonsville. Therefore, when he received notice of these charges could not have prejudiced him. And as to the completeness of the notice on which Plaintiff was found guilty, it contained a complete account of the circumstances surrounding the incident, stating "At approximately 1:30 PM you did resist Correctional Officers attempting to quell a riot on your floor, refuse to obey orders by said officers to cease rioting and attempted to aid another inmate who had attack (SIC) a Correctional Officer."

■ Plaintiff's fourth claim is that during his confinement in administrative segregation he was denied legal materials and was unable to prepare for the hearing. In his amended complaint Plaintiff states that this action prevented his access to the courts for redress of the violation of his constitutional rights.

Plaintiff states in his amended complaint, and it is indicated in the written report of the Disciplinary Committee attached to the original complaint, that he was represented before the Committee by another inmate, Paul Johnson. Appointment of an inmate representative would offset any prejudicial effects arising from the denial of legal materials to Plaintiff personally. See, *United States v. Chatman*, 584 F.2d 1358 (1978) and *Williams v. Leeke, et al.*, 584 F.2d 1336 (1978).

■ As to the allegations contained in the amended complaint, none of the persons who Plaintiff alleges acted in such a manner as to deny him access to the courts is a party to the present action, and this claim cannot be properly considered. In any case, however, the denial was only a short term occurrence, as Plaintiff's action now before this Court shows, and its length of only five days does not state a constitutional claim.

■ Plaintiff's fifth claim is that the notice of violation of institutional rules that he received upon his return to Huttonsville was violative of his due process rights because it was delivered to him nine days after the alleged infraction. Again, it must be noted that a serious "disturbance" had just occurred. A delay of only nine days does not state a constitutional claim. Indeed, the officials at Huttonsville are to be commended for reducing the delay to this level.

■ Plaintiff's sixth claim is that the testimony of the three officers at the Disciplinary Committee hearing was not sufficient to support a finding of guilt by the Committee. The sufficiency of the evidence or the findings of fact made by a disciplinary committee is not a matter which the courts should review. *Woodard v. Mills*, 511 F.2d 1399 (4th Cir. 1975).

■ Plaintiff's seventh claim is that the members of the Disciplinary Committee membership did not comply with state law, as contained in Senate Bill No. 570. That Section of Senate Bill No. 570 dealing with a disciplinary committee appears at W.Va.

Code § 28–5–28 (Supp.1977) and the contention here raised by Plaintiff has already been addressed by the West Virginia Supreme Court of Appeals in *Fisher v. Whyte*, 239 S.E.2d 133 (W.Va.1978). The Court there stated:

Petitioner's argument fails to place the disciplinary committee established by Code, 28–5–28 [1977] in its proper context.

The [statute] . . . in no way requires that the new committee supplant other legitimately constituted committees performing other functions, as, for example, the committee charged in the case before us with determining the petitioner's guilt or innocence. . . . In short, the statute presupposes the existence of some fact-finding adjudicatory body other than the committee established by the statute itself. Accordingly, petitioner's argument that the new committee must be the one to determine his guilt or innocence in this case is without merit.

Plaintiff's eighth and final claim, as contained in the original complaint, apparently was that the written report of the Disciplinary Committee was insufficient, making it impossible for him to defend himself. Since the report was filed after the committee hearing, their written report could have had no possible effect on Plaintiff's defense at the hearing itself. Plaintiff was, therefore, requested by this Court to restate this contention in an amended complaint. He did so but attacked the factual determination made by the committee, making this claim identical with that presented in his sixth claim. No further discussion of that contention is required here, reference to the earlier claim being sufficient.

▮ Finally, in an effort to do full justice, it is noted that there are several indications in the complaints, both original and as amended, that Plaintiff believes he was denied his due process rights by the Disciplinary Committee. However, the facts as alleged by Plaintiff show beyond doubt that the standards of *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974) were met, including advance written notice of the charges, written findings, and the right to call witnesses. The rights Plaintiff would desire include the unlimited right to call witnesses and the right to fully cross-examine his accusers. These rights Plaintiff does not possess. *Baxter v. Palmigiano*, 425 U.S. 308, 96 S.Ct. 1551, 47 L.Ed.2d 810 (1976).

In accordance with the foregoing, it having been determined that in consideration of the situation which existed at the Huttonsville Correctional Center and other matters, Plaintiff has failed to present any claims indicating any violation of his constitutional rights.

Consistent with the foregoing opinion, an order will follow dismissing this civil action.